# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| MARY WEBB, JOSEPH BERKOSKI, and STACY PLUEBELL, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) Case No. 1:11-cv-4141 |
| Plaintiffs, | ) ) Judge Joan H. Lefkow |
| v. | ) ) Magistrate Judge Sidney I. Schenkier |
| CLEVERBRIDGE, INC., a Delaware corporation, CLEVERBRIDGE, AG., a German company, and UNIBLUE SYSTEMS LTD., a Maltese Company | ) ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM IN SUPPORT OF DEFENDANT UNIBLUE SYSTEMS LTD.'S MOTION TO DISMISS THE CLAIMS AGAINST IT IN THE SECOND AMENDED COMPLAINT FOR IMPROPER VENUE AND LACK OF PERSONAL JURISDICTION

Gordon B. Nash, Jr.
Daniel J. Delaney
Daniel W. Werly
DRINKER BIDDLE & REATH LLP
191 N. Wacker Drive
Suite 3700
Chicago, Illinois 60606-1698
Telephone: (312) 569-1000

Attorneys for Uniblue Systems Ltd.

January 6, 2012

# TABLE OF CONTENTS

                                                                                                             **Page**

Introduction and Summary ..........................................................................................................1

Factual Background ....................................................................................................................2

Argument ....................................................................................................................................6

      I.      THE COURT SHOULD ENFORCE THE UNAMBIGUOUS FORUM
               SELECTION CLAUSE TO WHICH PLAINTIFFS AGREED IN THE
               EULA BEFORE INSTALLING REGISTRY BOOSTER ......................................6

      II.     THE FORUM SELECTION CLAUSE IN THE EULA APPLIES TO
               ALL OF PLAINTIFFS' CLAIMS AGAINST UNIBLUE AND
               REQUIRES PLAINTIFFS TO BRING THEIR CLAIMS AGAINST
               UNIBLUE IN THE COURTS OF MALTA .............................................................8

      III.    THE COURT SHOULD ALSO DISMISS THE CLAIMS AGAINST
               UNIBLUE BECAUSE IT LACKS SUFFICIENT CONTACTS WITH
               ILLINOIS TO SUBJECT IT TO PERSONAL JURISDICTION HERE ..............11

Conclusion ................................................................................................................................14

# TABLE OF AUTHORITIES

**Cases:**

*Abbott Labs. v. Takeda Pharm. Co. Ltd.*,
    476 F.3d 421 (7th Cir. 2007) .................................................................................. 10

*Am. Patriot Ins. Agency, Inc. v. Mutual Risk Mgmt., Ltd.*,
    364 F.3d 884 (7th Cir. 2004) .................................................................................... 9

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ................................................................................................ 13

*Carnival Cruise Lines, Inc. v. Shute*,
    499 U.S. 585 (1991) .............................................................................................. 6, 7

*Cont'l Cas. Co. v. Am. Nat. Ins. Co.*,
    417 F.3d 727 (7th Cir. 2005) .................................................................................... 3

*DeJohn v. The .TV Corp. Int'l*,
    245 F. Supp.2d 913 (N.D. Ill. 2003) ......................................................................... 7

*Faulkenberg v. CB Tax Franchise Systems, LP*,
    637 F.3d 801 (7th Cir. 2011) ............................................................................. 3, 10

*Ford v. Pacific Webworks, Inc.*,
    2011 WL 722499 (No. 09 C 7867, N.D. Ill. Feb. 23, 2011) ..................................... 7

*Frietsch v. Refco, Inc.*,
    56 F.3d (7th Cir. 1995) ............................................................................................ 7

*International Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ............................................................................................... 13

*Jennings v. AC Hydraulics A/S*,
    383 F.3d 546 (7th Cir. 2004) ............................................................................ 11, 12

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984) ............................................................................................... 13

*M/S Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972) ................................................................................................... 10

*Medrad, Inc. v. Sprite Development, LLC*,
    2010 WL 3700826 (No. 08 CV 5088, N.D. Ill. Sept. 8, 2010) ............................... 10

*Northwestern Nat. Ins. Co. v. Donovan*,
    916 F.2d 372 (7th Cir. 1990) ............................................................................ 10, 11

*Paper Express, Ltd. v. Pfankuch Maschinen GmbH*,
    972 F.2d 753 (7th Cir. 1992) ............................................................................................. 6, 11

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967) ................................................................................................................ 10

*Stephan v. Goldinger*,
    325 F.3d 874 (7th Cir. 2003) ................................................................................................. 10

*Tamburo v. Dworkin*,
    601 F.3d 693 (7th Cir. 2010) ................................................................................................. 12

*UBID, Inc. v. The GoDaddy Group, Inc.*,
    623 F.3d 421 (7th Cir. 2010) ................................................................................................. 12

**Federal Rules:**

Federal Rule of Civil Procedure 12(b)(2) .................................................................................... 2, 14

Federal Rule of Civil Procedure 12(b)(3) .................................................................................... 2, 14

**Foreign Laws:**

Council Regulation 44/2001, On Jurisdiction and the Recognition and Enforcement of
    Judgments in Civil and Commercial Matters, Article 23, 2000 O.J. (L12) 8 (EC) ............ 8

## Introduction and Summary

Plaintiffs' Second Amended Complaint ("Complaint" or "SAC") asserts claims in seven different counts for breach of contract, fraudulent inducement, conspiracy, and for alleged violations of certain Illinois and federal statutes, against Uniblue Systems Ltd. ("Uniblue"), Cleverbridge, Inc. ("Cleverbridge") and Cleverbridge, AG ("Cleverbridge-Germany"), based on Plaintiffs' purchase and use of Uniblue's RegistryBooster software for his or her computer. The claims against Uniblue are subject to Uniblue's End User License Agreement ("EULA") executed by all purchasers of Uniblue software products before such products can be installed on a purchaser's computer. The EULA is governed by the law of Malta and contains limits on the claims that purchasers might assert against Uniblue whether those claims arise in contract, tort or otherwise. Most importantly for purposes of this motion, the EULA expressly requires that Plaintiffs bring any related claims they might have against Uniblue in the Courts of Malta, where Uniblue has all of its employees, operations and facilities.[1]

The gist of the Complaint here is that RegistryBooster is supposedly a "worthless" product that Plaintiffs were somehow tricked into purchasing. It is therefore hard to imagine how Plaintiffs' claims do not relate to their use of RegistryBooster as alleged in the Complaint or that they are somehow unconnected to the EULA, which expressly states, among other things,

---

[1] The Complaint does not specifically state which claims are asserted against which defendants. It appears from the allegations that Plaintiffs intend to assert at least the first five claims—for alleged violations of the Illinois Consumer Fraud and Deceptive Practices Act, the Illinois Automatic Contract Renewal Act and the Electronic Funds Transfer Act, and for alleged fraud in the inducement and conspiracy—against all three defendants. Each of these counts mentions each defendant by its specific name and/or makes allegations about the "Cleverbridge Enterprise," which is defined to include all three defendants. SAC ¶¶ 1, 69-71, 77, 81-84, 90-91, 96-100, 115-119. The last two claims—alleging breach of contract and breach of the implied covenant of good faith and fair dealing—mention only Cleverbridge, Inc. and Cleverbridge, AG by name, with no reference at all to the "Cleverbridge Enterprise" or Uniblue by name. SAC ¶¶ 123-131, 134-136, 139, 141. Both of these claims, however, do allege a breach by "Defendants," which is defined to include all three defendants, and apparently seek damages from all of them. SAC ¶¶ 1, 125, 132, 138, 140, 142.

that it is "the entire agreement between You [the licensee] and Uniblue with respect to this subject matter." A forum selection clause such as that contained in the EULA is fully enforceable under governing Maltese law, and this Court should therefore enforce the forum selection clause found in the EULA governing Uniblue's relationship with Plaintiffs. This Court also lacks personal jurisdiction over Uniblue because it has not had sufficient contacts with Illinois by which non-Illinois residents like Plaintiffs here can hail it into the courts of Illinois. Any claims that Plaintiffs might have against Uniblue therefore must be brought in the Courts of Malta, as the EULA expressly provides. Since Plaintiffs' claims against Uniblue are subject to the "exclusive jurisdiction" of the Courts of Malta, this Court should dismiss all of Plaintiffs' claims against Uniblue pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue.

## Factual Background

RegistryBooster is a software product designed by Uniblue to remove obsolete, invalid or erroneous entries in a computer's registry. SAC ¶¶ 13, 37. It is available through a license from Uniblue that can be purchased on the internet through Cleverbridge-Germany, Uniblue's third-party vendor. SAC ¶¶ 14, 20. Plaintiffs Mary Webb, Joseph Berkoski and Stacy Pluebell ("Plaintiffs") allege that they were induced to purchase RegistryBooster following a free scan of their computer system that supposedly showed "false positives" for computer registry errors, but they claim to have discovered after purchase that RegistryBooster is "devoid of any utility, and is absolutely worthless, especially for the purposes for which it is advertised." SAC ¶¶ 21, 40-42. Plaintiff Stacy Pluebell further claims that the RegistryBooster software actually caused her computer to crash. SAC ¶ 59.

To install RegistryBooster on a computer, a license purchaser must electronically mark a checkbox or click a button marked "Agree & Install" indicating his or her acceptance of the

terms of the EULA and thereby agrees to be bound by those terms. See Affidavit of Frank Attard ("Attard Aff.") ¶¶ 3-4 (copy attached as Ex. 1 hereto) and Ex. A thereto (EULA) ¶ 1.[2] The complete text of the EULA is available for the license purchaser's review prior to installation, and the text above the "Agree & Install" button states: "By clicking the Agree & Install button below you would be agreeing to the User License Agreement." Attard Aff. ¶¶ 4-5. The EULA grants the purchaser a non-transferable license to install three copies of the Uniblue Software for the personal use of that purchaser for a one year term. Attard Aff. ¶ 7 & Ex. A ¶¶ 2, 14. Installation cannot be completed without indicating the purchaser's assent to the terms of the EULA whether the installation software was obtained through an internet download or from tangible or intangible media. Attard Aff. ¶¶ 3-4 & Ex. A ¶ 1. If the purchaser does not provide his or her electronic assent to the EULA, that purchaser can obtain a refund for any payment made to Uniblue's third-party vendor but may not install or make further use of the software. Attard Aff. ¶ 4 & Ex. A ¶ 1.[3] By installing RegistryBooster, that purchaser expressed his or her agreement to the terms of the EULA and must comply with its provisions.

Plaintiff Joseph Berkoski alleges that he is a resident of Pennsylvania and purchased RegistryBooster in or around June 2011. SAC ¶¶ 11, 56. Uniblue's records, however, show a purchase of RegistryBooster by Joseph Berkoski of Pennsylvania in December 2010 and his

---

[2] The Complaint does not mention the EULA. However, "[w]hen ruling on a motion to dismiss for improper venue, the district court is not 'obligated to limit its consideration to the pleadings [or to] convert the motion to one for summary judgment' if the parties submit evidence outside the pleadings." *Faulkenberg v. CB Tax Franchise Systems, LP*, 637 F.3d 801, 810-811 (7th Cir. 2011) (*quoting Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005)).

[3] Uniblue also offered a separate 30-day money-back guarantee for consumers who installed RegistryBooster after agreeing to the terms of the EULA but were dissatisfied with the product. SAC ¶ 46. The Complaint alleges generally that Plaintiff Joseph Berkoski sought such a refund within the 30 day period but it does not describe any specific refund requests or even list the dates of such requests. SAC ¶ 57.

subsequent purchase of another Uniblue software product (PowerSuite) in June 2011.  Attard Aff. ¶¶ 8-9.  In any event, there is no material difference in the relevant terms of the EULA discussed herein whether Mr. Berkoski purchased in December 2010 or June 2011.  Attard Aff. ¶ 9.  Plaintiff Stacy Pluebell alleges that she is a resident of Texas and purchased RegistryBooster in or around December 2010.  SAC ¶¶ 12, 58.  Copies of the EULA for both June 2011 and December 2010 to which Ms. Pluebell and Mr. Berkoski assented are attached as Exhibits A and B to the Affidavit of Frank Attard.  Attard Aff. ¶¶ 8-10.

There may be no EULA at all for RegistryBooster or any other Uniblue product with Plaintiff Mary Webb (who alleges she is a citizen of Maryland, SAC ¶ 10) because it does not appear that she ever purchased any Uniblue product.  Ms. Webb alleges that she purchased RegistryBooster in or around April 2009 and that she paid for a renewal in or around April 2010.  SAC ¶¶ 53, 55.  But Uniblue has no record of any Mary Webb of Maryland making such purchases, and other evidence refutes her claims.  Attard Aff. ¶ 11.  The Complaint references online public forum posts (SAC ¶ 52), and a post can be found on www.complaintsboard.com in April 2010 from a Mary Webb in Smithsburg, Maryland concerning a Uniblue product with order number 5441715.  See http://www.complaintsboard.com/complaints/uniblue-smithsburg-maryland-c332364.html (last viewed January 5, 2012) (copy attached as Ex. C to Affidavit of Frank Attard).  That order number, however, is for a purchase by a different customer (Richard Webb, not Mary Webb, of Smithsburg, Maryland) for a different Uniblue product (DriverScanner, not RegistryBooster).  Attard Aff. ¶ 11 & Ex. D thereto.  A copy of the EULA that became effective for the purchase associated with order number 5441715 (though it is for DriverScanner, not RegistryBooster) is attached as Exhibit E to the Affidavit of Frank Attard.  Attard Aff. ¶ 11.  This EULA also contains the same language for the forum selection provision contained in the versions of the RegistryBooster EULA to which Mr. Berkoski and Ms. Pluebell

agreed.  See Attard Aff. Exs. A & B ¶ 18, Ex. E ¶ 19.  If Ms. Webb did install Uniblue's software, she also must abide by this EULA.

The EULA subscribed to by Plaintiffs explicitly provides that it is "the entire agreement between You [the licensee] and Uniblue with respect to this subject matter and supersedes any and all prior or contemporaneous oral or written agreements, representations, negotiations, any additional terms or other similar communication between the parties."  *Id*., Exs. A & B ¶ 17, Ex. E ¶ 18.  Since the EULA governed the relationship between Uniblue and any licensee and contained important terms and conditions, Uniblue expressly advised licensees to "keep a copy of the License Agreement for your records."  *Id*., Exs. A, B & E ¶ 1.  Among other things, the EULA provides limits on claims that might be asserted by a purchaser against Uniblue, whether such claims arise in contract, tort or otherwise.  *Id*., Exs. A & B ¶ 10, Ex. E ¶ 11.

The EULA specifies that it is governed by the law of Malta.  *Id*., Exs. A & B ¶ 18, Ex. E ¶ 19.  Malta is a logical choice for the governing law because Uniblue has all of its employees, operations and facilities in Malta.  Attard Aff. ¶ 2.  Rather than leave the choice of law question open to any of the numerous countries (and states or other sub-jurisdictions) in which Uniblue has licensees, it is simply natural to select the law of the licensor's home country as the controlling law for all such license agreements.  The EULA further provides that "[a]ll disputes arising out of or in relation to this Agreement shall be submitted to the *exclusive jurisdiction* of the Courts of Malta."  Attard Aff. Exs. A & B ¶ 18, Ex. E ¶ 19  (emphasis added).  Since the EULA is governed by Maltese law and all of Uniblue's witnesses and evidence will likely be in Malta, a Maltese venue is also entirely logical for any litigation between Uniblue and a licensee.  Moreover, Uniblue could be confident that a Maltese court would find such a forum selection clause enforceable.  Uniblue submits an affidavit from a Maltese lawyer attesting that such forum selection clauses are enforceable in a Maltese court applying Maltese law.  See Affidavit

of Reuben Balzan ("Balzan Aff.") ¶¶ 4-6 (copy attached as Ex. 2 hereto). The terms of the EULA therefore require that Plaintiffs bring their claims against Uniblue related to the purchase and use of RegistryBooster exclusively in the Courts of Malta.

## Argument

I. **THE COURT SHOULD ENFORCE THE UNAMBIGUOUS FORUM SELECTION CLAUSE TO WHICH PLAINTIFFS AGREED IN THE EULA BEFORE INSTALLING REGISTRY BOOSTER.**

There is no question that the forum selection clause in the EULA mandates that all litigation against Uniblue related to RegistryBooster must be brought in the Courts of Malta. The EULA plainly provides that "[a]ll disputes arising out of or in relation to this Agreement shall be submitted to the *exclusive jurisdiction* of the Courts of Malta." EULA (Attard Aff. Exs. A & B) ¶ 18 (emphasis added). The EULA anticipated that disputes could arise in "contract, tort or otherwise" (EULA ¶ 10), and it unambiguously provides that *all* disputes must be brought in Malta, where Uniblue has all of its employees, operations and facilities. As the Seventh Circuit has recognized, "[t]he law is clear: where venue is specified with mandatory or obligatory language, the clause will be enforced." *Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992) (holding that forum selection clause under rules referenced in relevant documents required Illinois purchaser to bring claims against German seller in Germany because the provision clearly designates it as the "exclusive" forum). The explicit use of the term "exclusive" in the forum selection clause here made it crystal clear that Plaintiffs can only bring their claims against Uniblue in the Courts of Malta.

The United States Supreme Court has also recognized that there is no public-policy basis under federal law to disregard such forum selection clauses that appear in "form contracts" that were not the subject of negotiation. See *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991). Indeed, the same reasons the Court cited favorably in *Carnival Cruise Lines* for

upholding a forum selection clause in the ticket form contract there are also present here. First, like the cruise ship carrying passengers from many locales that "could subject the cruise line to litigation in several different fora" (*Carnival Cruise Lines*, 499 U.S. at 593), internet sales of Uniblue's products around the world pose the same risk of litigation in multiple jurisdictions for Uniblue. Additionally here, as in *Carnival Cruise Lines*, "a clause establishing *ex ante* the forum for dispute resolution has the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended." *Id*. at 593-94. Finally, just like the cruise ship passengers purchasing tickets with a forum selection clause who "benefit in the form of reduced fares reflecting the savings that the cruise line enjoys by limiting the fora in which it may be sued" (*id*. at 594), Uniblue's customers realized savings and other benefits from such a clause reflected in the reduced $30 purchase price for Uniblue's software along with a 30-day money-back guarantee. SAC ¶¶ 46, 53, 56, 58.[4]

The forum selection clause in the EULA is likewise enforceable under the law of Malta. Since the EULA is governed by the law of Malta, the enforceability of the forum selection clause in the EULA should also be controlled by Maltese law. See, *e.g.*, *Frietsch v. Refco, Inc.*, 56 F.3d 825, 828 (7th Cir. 1995) (recognizing that enforceability of forum selection clause in contract governed by German law should be determined under German law, but finding that plaintiffs challenging the clause waived arguments about German law); *Ford v. Pacific Webworks, Inc.*, 2011 WL 722499, *2 n.3 (No. 09 C 7867, N.D. Ill. Feb. 23, 2011) ("In the Seventh Circuit, the validity of the forum selection clause depends on the law of the jurisdiction specified in the

---

[4] Federal courts also routinely enforce forum selection clauses in the type of "click-wrap" agreement—where a party manifests assent to the terms of an agreement by clicking an electronic icon— used both here and frequently elsewhere in internet commerce. See, *e.g.*, *DeJohn v. The .TV Corp. Int'l*, 245 F. Supp.2d 913, 921 (N.D. Ill. 2003) ("The fact that the contract is electronic does not affect this conclusion" that "a forum selection clause is presumptively valid.").

agreement."). As explained in the affidavit of the Maltese lawyer (Reuben Balzan) submitted with Uniblue's motion, Malta is a member of the European Union with a mixed legal system blending common law and civil law elements. Article 23 of EU Council Regulation 44/2001 (copy attached as Exhibit A to Mr. Balzan's Affidavit) expressly provides for the enforcement of a forum selection provision in a contract involving a citizen of an EU member such as Malta:

> If the parties, one or more of who is domiciled in a Member State, have agreed that a court or the courts of a Member State are to have jurisdiction to settle any disputes which have arisen or which may arise in connection with a particular legal relationship, that court or those courts shall have jurisdiction. Such jurisdiction shall be exclusive unless the parties have agreed otherwise.

Council Regulation 44/2001, On Jurisdiction and the Recognition and Enforcement of Judgments in Civil and Commercial Matters, Article 23, 2000 O.J. (L12) 8 (EC).

The Courts of Malta will therefore enforce the forum selection clause in the EULA because the validity of such clauses are expressly recognized in the applicable law, there is no basis even alleged to find the clause unenforceable, and there is no question that a Maltese court could exercise jurisdiction over an entity domiciled in Malta. Balzan Aff. ¶¶ 4-7. Thus, the forum selection clause in the EULA is enforceable under both federal law and the law of Malta. Indeed, venue in Malta for this dispute is particularly appropriate because this Court likely has little familiarity with the Maltese law that expressly governs the contractual relationship between Uniblue and Plaintiffs. Any questions concerning any contract-based claims or defenses under Maltese law, including the limitations on liability contained in paragraph 10 of the EULA, are best decided by a Maltese court more familiar with its own civil and common law.

**II. THE FORUM SELECTION CLAUSE IN THE EULA APPLIES TO ALL OF PLAINTIFFS' CLAIMS AGAINST UNIBLUE AND REQUIRES PLAINTIFFS TO BRING THEIR CLAIMS AGAINST UNIBLUE IN THE COURTS OF MALTA.**

It is not entirely clear whether Plaintiffs seek to assert any contract claims against Uniblue. See n. 1, *supra*. Any such contract claims, however, are plainly governed by the

EULA since it is the "entire agreement" between Uniblue and licensed users of RegistryBooster, and that Agreement expressly supersedes "any prior or contemporaneous oral or written agreements, representations, negotiations, [and] any additional terms or other communications between the parties." EULA (Attard Aff. Exs. A & B) ¶ 17. In any event, Plaintiffs' assertion of non-contract claims against both Uniblue and other parties does not negate the effect of the forum selection clause in the EULA. "[S]uch clauses would be empty" if it were true that "a plaintiff can defeat a forum-selection clause by its choice of provisions to sue on, of legal theories to press, and of defendants to name in the suit." *Am. Patriot Ins. Agency, Inc. v. Mutual Risk Mgmt., Ltd.*, 364 F.3d 884, 888 (7th Cir. 2004). Indeed, "a dispute over a contract does not cease to be such merely because instead of charging breach of contract the plaintiff charges a fraudulent breach, or fraudulent inducement, or fraudulent performance." *Id*., 364 F.3d at 889.

The forum selection clause in the EULA is not limited to contract claims between the parties. The EULA expressly anticipated that the parties conceivably might bring claims arising in "contract, tort or otherwise" (EULA ¶ 10), and the forum selection clause was drafted broadly to cover "all disputes arising out of or in relation to this Agreement," without regard to the legal theory that might be asserted. EULA ¶ 18. As the Seventh Circuit recognized in *American Patriot*, "the existence of multiple remedies for wrongs arising out of a contractual relationship does not obliterate the contract setting, does not make the dispute any less one arising under or out of or concerning the contract, and does not point to a better forum for adjudicating the parties' dispute than the one they had selected to resolve their contractual disputes." *Am Patriot Ins. Agency*, 364 F.3d at 889. Plaintiffs have undoubtedly asserted non-contract claims against Uniblue, but all of their claims against Uniblue are subject to the forum selection clause in their Agreement with Uniblue.

Some U.S. courts had initially been reluctant to enforce forum selection clauses, but *Carnival Cruise Lines* and earlier decisions by both the Supreme Court and the Seventh Circuit served to "bury the outmoded judicial hostility to forum selection clauses" and established the modern approach of treating "a forum selection clause basically like any other contractual provision and hence to enforce it unless it is subject to any of the sorts of infirmity, such as fraud and mistake, that justify a court's refusing to enforce a contract, or unless it does not mean what it seems to mean—unless, in other words, properly interpreted it is not a forum selection clause at all." *Northwestern Nat. Ins. Co. v. Donovan*, 916 F.2d 372, 375 (7th Cir. 1990). The party resisting enforcement of the forum selection clause now bears the burden to "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). "[O]rdinarily the parties' contractual choice of forum should be overridden only if that choice would impose significant costs on third parties or on the judicial system." *Abbott Labs. v. Takeda Pharm. Co. Ltd.,* 476 F.3d 421, 423 (7th Cir. 2007).

Although Plaintiffs here claim that they were fraudulently induced to purchase RegistryBooster, there is no claim that the forum selection clause itself was the product of any fraudulent inducement. "Even if [the contract itself] were procured by fraud, the venue provision would be valid by analogy to the arbitrability of disputes arising out of contracts procured by fraud when there is no argument that the arbitration provision itself was procured by fraud." *Stephan v. Goldinger*, 325 F.3d 874, 879 (7th Cir. 2003). See also, *e.g., Faulkenberg,* 637 F.3d at 811 (upholding dismissal for improper venue because "[t]he only relevant inquiry at this stage is whether the arbitration clause *itself* was fraudulently induced—that is, whether there was fraud that 'goes to the 'making' of the agreement to arbitrate'") (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967)) (emphasis in original); *Medrad, Inc. v. Sprite*

*Development, LLC*, 2010 WL 3700826, *3 (No. 08 CV 5088, N.D. Ill. Sept. 8, 2010) ("To invalidate a forum selection clause, the *inclusion* of the clause must have been the product of fraud.") (emphasis in original).

Nor can Plaintiffs evade the forum selection clause in the EULA by claiming now that it would be too inconvenient for them to litigate their claims in Malta. The Seventh Circuit has found that the inconvenience and additional expense for a plaintiff to assert a claim in another state or foreign country are not sufficient to invalidate a forum selection clause. See, *e.g.*, *Paper Express*, 972 F.2d at 758. When parties from different states or different continents find themselves in litigation, at least one of them must necessarily litigate outside their home state or country, and courts both here and in Malta enforce the venue choices reflected in the parties' contract before such disputes arose. See *Northwestern Nat. Ins.*, 916 F.2d at 378 ("For if it proves a huge inconvenience to [defendants] to have to trundle up to Milwaukee to attend the trials in these cases . . . it will prove an equally huge convenience to [plaintiff] to be able to defend these suits in home territory"). Each plaintiff here has already elected to file this litigation outside his or her home state. There is simply no basis for the Court to decline to enforce the forum selection clause in the EULA to which Plaintiffs and Uniblue agreed. Plaintiffs cannot bring their claims against Uniblue outside the Courts of Malta.

### III. THE COURT SHOULD ALSO DISMISS THE CLAIMS AGAINST UNIBLUE BECAUSE IT LACKS SUFFICIENT CONTACTS WITH ILLINOIS TO SUBJECT IT TO PERSONAL JURISDICTION HERE.

None of the Plaintiffs are residents of Illinois, yet they seek to assert claims here against a Maltese company that has all of its facilities, operations and employees in Malta. SAC ¶¶ 10-12; Attard Aff. ¶ 2. The exercise of personal jurisdiction over a foreign defendant must comport with the requirements of due process, and Plaintiffs bear the burden of establishing personal jurisdiction over each defendant. See, *e.g.*, *Jennings v. AC Hydraulics A/S*, 383 F.3d 546, 548-49

(7th Cir. 2004); *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010). The Complaint here, however, only vaguely alleges that "Defendants" conduct business in Illinois and "unlawful conduct" supposedly "occurred in, was directed and/or emanated from Illinois." SAC ¶ 8. The only specific allegation about Illinois in the entire Complaint is that another defendant, Cleverbridge, has an office in Chicago. The Affidavit of Frank Attard and the exhibits attached thereto demonstrate, however, that Uniblue has little connection to Illinois other than the fact that its licensees from around the world might include at least some Illinois residents. Attard Aff. ¶¶ 2-3. Moreover, the agreement between Uniblue and its licensees specifies that the Courts of Malta will have "exclusive jurisdiction" over any disputes that arise under or relate to that licensing agreement. The due process limitation on personal jurisdiction "allows potential defendants to structure their contacts with different forums so as to plan where their business activities will and will not render them liable to suit." *Jennings*, 383 F.3d at 549. Uniblue and its licensees expressly agreed upon the specific jurisdiction where Uniblue could be sued.

There is no basis here to find either "general jurisdiction" or "specific jurisdiction" over Uniblue in Illinois. The courts have formulated a "demanding standard" for general jurisdiction because the consequences of such a finding—requiring that defendant to answer all manner of suits in a jurisdiction that is unconnected to the particular claim—"can be severe." *uBID, Inc. v. The GoDaddy Group, Inc.*, 623 F.3d 421, 426 (7th Cir. 2010). The general jurisdiction standard "requires the defendant to have such extensive contacts with the state that it can be treated as present in the state for essentially all purposes." *Id*. The Seventh Circuit has held that simply offering products for sale on the internet, or maintaining an internet website, does not render a defendant subject to "general jurisdiction" in every location where the internet can be accessed. See *Tamburo*, 601 F.3d at 701 (maintenance of public internet website is insufficient to establish "general jurisdiction"); *uBID*, 623 F.3d at 426 (advertising in Illinois and hosting websites

accessible in Illinois is insufficient to establish "general jurisdiction"). Since the Complaint makes no other allegations about the presence of Uniblue in Illinois, Plaintiffs have simply failed to meet the demanding standard for a finding of "general jurisdiction" over Uniblue in Illinois.

Plaintiffs have also failed to establish a sufficient connection between their claims against Uniblue and the State of Illinois to support any finding of "specific jurisdiction" here. For a finding of specific jurisdiction, the Supreme Court's decisions in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984) require Plaintiffs to establish that "the relationship between the plaintiff's claim and the defendant's contacts with the state made it fair to call the defendant into court there." *uBID*, 623 F.3d at 427. This requires a showing that "the plaintiff's claim against the defendant 'arise out of relate to' those contacts." *Id*., 23 F.3d at 429 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985)). Since none of the Plaintiffs reside in Illinois, there is no basis to find "specific jurisdiction" here for their claims against Uniblue.

The fact that one defendant, Cleverbridge, has an office in Illinois is hardly significant to Plaintiffs' claims about the products developed by a Maltese company that Plaintiffs purchased on the internet from their homes in Maryland, Pennsylvania and Texas. As Plaintiffs concede, Uniblue's sales arrangement was with the German company, Cleverbridge-Germany, which "is the entity that actually sells RegistryBooster to consumers." SAC ¶ 20. Although Plaintiffs claim that Cleverbridge-Germany sold the product on occasion to Cleverbridge, who then "resold" it to some consumers, supposedly including two of the three Plaintiffs, those middleman transactions have nothing to do with the substance of any claims against Uniblue. Uniblue has no presence in Illinois, and did not even enter a contract with an entity that has such a presence related to Plaintiffs' claims against Uniblue. The Court should therefore dismiss Plaintiffs' claims against Uniblue for lack of personal jurisdiction pursuant to Rule 12(b)(2).

**Conclusion**

For the reasons set forth above, Defendant Uniblue Systems, Ltd. respectfully requests that the Court enforce the forum selection clause in the parties' EULA and dismiss the claims asserted against it for lack of personal jurisdiction and improper venue pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3).

Dated: January 6, 2012                              Respectfully submitted,
                                                    UNIBLUE SYSTEMS LTD.

                                                    By:  /s/Gordon B. Nash Jr.
                                                    One of its attorneys

Gordon B. Nash, Jr.
Daniel J. Delaney
Daniel W. Werly
DRINKER BIDDLE & REATH LLP
191 N Wacker Drive
Suite 3700
Chicago, Illinois 60606-1698
Telephone:  (312) 569-1000

Attorneys for Uniblue Systems Ltd.