**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| MARY WEBB, JOSEPH BERKOSKI, and STACY PLUEBELL, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:11-cv-04141 |
| v. | ) ) | The Honorable Joan H. Lefkow |
| CLEVERBRIDGE, INC., a Delaware corporation, CLEVERBRIDGE AG, a German company, and UNIBLUE SYSTEMS LTD., a Maltese company, | ) ) ) ) | Magistrate Judge Sidney I. Schenkier |
| Defendants. | ) ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT UNIBLUE SYSTEMS
LTD.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT FOR
<u>IMPROPER VENUE AND LACK OF PERSONAL JURISDICTION</u>**

**TABLE OF CONTENTS**

I.    **INTRODUCTION** ...................................................................................1

II.   **FACTUAL BACKGROUND** ..................................................................2

III.  **ARGUMENT**..........................................................................................4

      A.    **This Court Should Refuse to Enforce Uniblue's Forum Selection Clause Because It Denies the Plaintiffs Their Day in Court, Improperly Waives Their Statutory Protections, and Has Expired According to Its Own Terms**...................................................................5

            1.    **Uniblue's forum selection clause—in depriving litigants their day in Court—is substantively unconscionable** ......................................5

            2.    **The procedure used to impose the forum selection clause is marred by evidence of fraud and overreaching**.....................................9

            3.    **Enforcing the forum selection clause would offend public policy under both the Illinois Consumer Fraud and Deceptive Business Practices Act and the Electronic Funds Transfer Act** ..........10

            4.    **Uniblue's ability to enforce the forum selection clause expired for each Plaintiff a year after they purchased or last renewed their respective licenses** ...........................................11

      B.    **Uniblue Enjoys Sufficient Contacts With Illinois To Confer Jurisdiction**.......................................................................................13

IV.  **CONCLUSION** ...................................................................................15

# TABLE OF AUTHORITIES

**United States Supreme Court Cases Cited**

*Asahi Metal Indus. Co., Ltd. v. Sup. Ct. of Cal., Solano Cnty.*, 480 U.S. 102 (1987) ..................14

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)....................................................14

*Carnival Cruise Lines v. Shute*, 499 U.S. 585 (1991) ...........................................7, 8, 9

*Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326 (1980 ....................................7 n.4

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) .........................................13

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) ...........................................5, 6

*Scherk v. Alberto-Culver Co.*, 417 U.S. 506 (1974) ......................................5 n.2

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980).........................................13, 14


**United States Court of Appeals Cases Cited**

*AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510 (7th Cir. 2001) ...........................................5

*Bonny v. Soc'y of Lloyds*, 3 F.3d 156 (7th Cir. 1993)....................................................5, 6, 10

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004) ...............................................7 n.4

*GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018 (7th Cir. 2009) ...........................15

*Hyatt Int'l Corp. v. Coco*, 302 F.3d 707 (7th Cir. 2002) ....................................................13

*Nw. Nat. Ins. Co. v. Donovan*, 916 F.2d 372 (7th Cir. 1990) .........................................7 n.6, 8 n.6

*Paper Exp., Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753 (7th Cir. 1992).............7 n.6, 8 n.6

*Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17 (2d Cir. 2002) .........................................10 n.8

*Stauffacher v. Bennett*, 969 F.2d 455 (7th Cir. 1992)....................................................15

*Textor v. Board of Regents*, 711 F.2d 1387 (7th Cir. 1983) .........................................13

*Thompson v. Amoco Oil Co.*, 903 F.2d 1118 (7th Cir. 1990)....................................................12


**United States District Court Cases Cited**

*Chase Bank USA, N.A. v. Swanson*, No. 10-cv-06972, 2011 WL 529487
(N.D. Ill. Feb. 4, 2011) .......................................................12 n.10

*Harris v. comScore, Inc.*, No. 11 C 5807, 2011 WL 4738357 (N.D. Ill. Oct. 7, 2011)...........10 n.8

*Hecny Transp., Inc. v. Chu*, No. 98 C 7335, 1999 WL 134202 (N.D. Ill. Mar. 8, 1999)..............15

*Markarian v. Garoogian*, 767 F. Supp. 173 (N.D. Ill. 1991) .......................................................13

*Olson v. Jenkens & Gilchrist*, 461 F. Supp. 2d 710 (N.D. Ill. 2006).....................................13, 14

*O'Quinn v. Comcast Corp.*, No. 10 C 2491, 2010 WL 4932665 (N.D. Ill. Nov. 29, 2010)...........5

*Rawat v. Navistar Int'l Corp.*, No. 08-CV-04305, 2012 WL 37110
     (N.D. Ill. Jan. 4, 2012) .........................................................................................................12

*Sayles v. DirectSat USA, LLC*, No. 10 C 2879, 2011 WL 382875 (N.D. Ill. Feb. 3, 2011)...........6

*Time Warner Sports Merch. v. Chicagoland Processing Corp.*, 974 F. Supp. 1163
     (N.D. Ill. 1997) ......................................................................................................................7

## State Court Cases Cited

*Aral v. EarthLink, Inc.*, 134 Cal. App. 4th 544 (Cal. Ct. App. 2005).............................................6

*Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 115 Ill. 2d 482 (Ill. 1987) ...............................12

*Frank's Maint. & Eng'g, Inc. v. C.A. Roberts Co.*, 86 Ill. App. 3d 980 (1st Dist. 1980)...............9

*Henderson v. Roadway Express*, 308 Ill. App. 3d 546 (4th Dist. 1999).......................................11

*Phoenix Ins. Co. v. Rosen*, 242 Ill. 2d 48 (2011) .........................................................................5

*Tortoriello v. Gerald Nissan of N. Aurora, Inc.*, 379 Ill. App. 3d 214 (2d Dist. 2008)................11

## Federal Statutes Cited

Electronic Funds Transfer Act, 15 U.S.C. § 1693, *et seq.* .....................................................10, 11

Fed. R. Civ. P. 44.1 ................................................................................................................7 n.5

## State Statutes Cited

735 ILCS 5/2-209(a).....................................................................................................................13

Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq* .................10, 11

## International Sources Cited

Council Regulation No. 44/2001, arts. 16–17, 2001 O.J. (L012) 1 (EC).......................8 n.7, 9 n.7

**Secondary Sources Cited**

14 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and
    Procedure § 3803.1 (3d ed. 1998)........................................................................6, 9

European Union Executive Summary and Overview of the National Report for Malta ................7

11 Williston on Contracts § 32:12 (4th ed. 2010)..............................................................12 n.10

# I.     INTRODUCTION

In this putative class action, Plaintiffs seek to hold Defendant Uniblue Systems Ltd. ("Uniblue") responsible for its sale of "scareware"—software that falsely identifies computer errors for the sole purpose of tricking consumers into purchasing upgrades that will supposedly "fix" the fake problems. Uniblue—in tandem with its co-defendants/conspirators cleverbridge AG and cleverbridge, Inc.—used its scareware to con the Plaintiffs and over one million other unsuspecting "customers" in the United States into needlessly buying Uniblue's products.

Rather than modify its software so that it no longer falsely detects fake errors, Uniblue seeks to prolong its fraud by filing a Motion to Dismiss that, of all things, would force its victims to fly half-way around the world in order to redress their claims. In doing so, Uniblue asks this Court to do what no other court—even those that look favorably on forum selection clauses—has done in the history of American jurisprudence.

Indeed, Uniblue's forum selection clause—which designates its home turf, the island nation of Malta, as the location for all consumer disputes—is simply unenforceable. First, the clause substantively deprives the Plaintiffs and numerous others of their day in court, effectively exculpating Uniblue for its fraudulent conduct. Second, the process Uniblue employs to impose the forum selection clause is marred by evidence of fraud and overreaching. Third, the anti-waiver provisions of both the Illinois Consumer Fraud Act and the Electronic Funds Transfer Act prohibit its enforcement, as do strong public policy considerations. And fourth, even if the Court were to find that the forum selection clause could theoretically survive these contract defenses, the clause has plainly expired under its own terms.

Uniblue's second argument—that it lacks sufficient contacts with Illinois—fares no better. Uniblue ignores long-standing principles of jurisdiction, the allegations of the Complaint,

and the realities of its (and its co-conspirators') fraudulent scheme. Illinois was their entryway into the U.S. market, and co-defendant/conspirator cleverbridge Inc. maintains its principal place of business in Illinois. Because they introduced their product so that it reached Illinois, they cannot now seriously object to this Court's jurisdiction over the case.

Accordingly, when the facts are viewed in their proper context, Uniblue's Motion to Dismiss is exposed for what it really is—a proverbial "Hail Mary" pass. As explained below, and particularly in light of Uniblue's choice to defraud millions of Americans through its scareware, this Court should refuse to perform any miracles.

## II.    FACTUAL BACKGROUND

*Uniblue and cleverbridge's Scheme to Defraud U.S. Consumers Through Scareware*

Defendants Uniblue, cleverbridge, Inc. and cleverbridge AG have conspired to deceive more than one *million* United States consumers into purchasing software ("RegistryBooster") that Uniblue falsely claims will increase the speed and efficiency of their personal computers. (Second Amended Complaint ["SAC"], Dkt. No. 32, ¶¶ 1–5.) Defendants' scheme begins with a seemingly harmless offer to run a free diagnostic computer scan using RegistryBooster to detect so-called errors that Uniblue claims are responsible for slow processing speeds, system crashes, and other computer problems. (SAC ¶¶ 2, 21.) This free "diagnostic" scan is offered on Defendants' website, www.uniblue.com, which Uniblue, cleverbridge, Inc. and cleverbridge AG worked hand-in-hand to create. (SAC ¶ 21.)

Unfortunately for users, the software invariably "detects" errors that do not actually exist.[1] (SAC ¶ 21.) To "fix" these fake errors, Uniblue informs the consumer that he or she must purchase RegistryBooster for $29.95. (SAC ¶ 3.) The user is then directed to a webpage hosted

---

[1]    Through their attorneys, Plaintiffs retained a team of computer forensics experts whose research revealed, *inter alia*, that RegistryBooster is intentionally designed to invariably report harmful errors present on a user's computer to induce purchase of the product. (SAC ¶¶ 43–44.)

by Uniblue's exclusive U.S. "reseller"—cleverbridge, Inc.—where their customers' credit card information is collected and the transaction is consummated. (SAC ¶¶ 21, 24-27.)

Put simply, Defendants use RegistryBooster's free diagnostic scan to create the appearance that the consumer's computer is severely damaged (when it is not) and then charge a fee to fix it. (SAC ¶¶ 34-44.) Each Defendant has full knowledge and awareness of the fraudulent nature of RegistryBooster, (SAC ¶ 23), and each Defendant profits from every sale of the product. (SAC ¶¶ 20)

*Defendants Intentionally Frustrate U.S. Customers' Ability to Receive Refunds*

On the checkout page for RegistryBooster, Defendants represent that the product is protected by a thirty-day money back guarantee. (SAC ¶¶ 45, 69, 95, 117, 126.) Similarly, Uniblue's End User License Agreement ("EULA") states that customers may obtain a refund for the software if they "return it to the vendor from which it was acquired, or to Uniblue, together with proof of payment within thirty (30) days from the date of purchase." (Attard Decl., Dkt. No. 62-1, at 8.) Defendants systematically refuse to honor these provisions and provide refunds for RegistryBooster—even when the refund is sought within the stated 30-day refund period. (SAC ¶¶ 26-33, 45–48.) Rather, and as routine policy, Defendants obstruct customer efforts to obtain refunds by failing to answer and refusing to return customer telephone calls and, on the rare occasion when contact is made, Defendants falsely tell their customers that a refund has been issued (when in fact it has not, and never will be). (SAC ¶ 27, 57.)

*The Plaintiffs Each Purchased Uniblue Software To Fix The Identified "Errors" in 2010*

Each Plaintiff visited Defendants' website, www.uniblue.com, and ran Uniblue's free "diagnostic" scan. (SAC ¶¶ 53–59.) To induce the Plaintiffs into thinking they needed to purchase the full version of the RegistryBooster software, the Uniblue diagnostic test generated

results that falsely indicated the presence of serious system errors on each of the Plaintiffs' computers. (SAC ¶¶ 34–42.) Plaintiffs each relied on the fabricated test results when they purchased the RegistryBooster software. (SAC ¶¶ 53, 56, 58.) Furthermore, Plaintiff Berkoski repeatedly requested a refund from Defendants, but his requests were ignored. (SAC ¶ 57.)

In support of its Motion to Dismiss, Uniblue attaches the declaration of its Support Manager, Frank Attard. Mr. Attard testifies that, according to Uniblue's records, Plaintiffs Stacy Pluebell and Joseph Berkoski each completed their purchases of RegistryBooster in December 2010 and never renewed their licenses. (Attard Decl., Dkt. No. 62-1, ¶¶ 8, 10.) Further, Uniblue has no record that Plaintiff Mary Webb ever purchased the software. Uniblue was able to retrieve a record reflecting a purchase to an individual named Richard Webb, who apparently purchased Uniblue software in April 2009 and renewed his license one time in April 2010. (*Id*. at ¶ 11.)

### III.    ARGUMENT

Uniblue raises two arguments on dismissal: first, that the Court should uphold its forum selection clause designating Malta as the location for any disputes and, second, that it lacks the minimum contacts necessary to be subject to the Court's jurisdiction. Fortunately for the millions of U.S. consumers bilked by Uniblue and its cohorts, neither the law nor the facts support granting the motion. As explained below, Uniblue's forum selection clause is subject to myriad contract defenses, and Uniblue cannot seriously contend that its fraudulent scheme—which used Illinois as its entryway into the U.S. market—falls beyond the reach of an Illinois court.

**A.    This Court Should Refuse to Enforce Uniblue's Forum Selection Clause Because It Denies the Plaintiffs Their Day in Court, Improperly Waives Their Statutory Protections, and Has Expired According to Its Own Terms.**

Though the historic judicial hostility to forum selection clauses has undoubtedly waned, their enforcement is by no means automatic. As the Seventh Circuit has recognized, forum

selection clauses are "enforceable unless (1) '[its] incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power; (2) the selected forum is so gravely difficult and inconvenient that [the complaining party] will for all practical purposes be deprived of its day in court; or (3) [its] enforcement . . . would contravene a strong public policy of the forum in which the suit is brought, declared by statute or judicial decision.'" *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 525 (7th Cir. 2001) (quoting *Bonny v. Soc'y of Lloyds*, 3 F.3d 156, 160 (7th Cir. 1993)); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12–18 (1972). Likewise, forum selection clauses may be rendered unenforceable by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *O'Quinn v. Comcast Corp.*, 2010 WL 4932665, at *3 (N.D. Ill. Nov. 29, 2010) (internal quotation omitted).[2] Each of these considerations weighs heavily against upholding the forum selection clause.

1.      **Uniblue's forum selection clause—in depriving litigants their day in Court— is substantively unconscionable.**

Under Illinois law, "substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed, asking whether the terms are so one-sided as to oppress or unfairly surprise an innocent party." *Phoenix Ins. Co. v. Rosen*, 242 Ill. 2d 48, 60 (2011). In the context of forum selection clauses, enforcement should be avoided where it would cause Plaintiffs to suffer severe physical or financial hardship. *See Sayles v. DirectSat USA, LLC*, 2011 WL 382875, at *3 (N.D. Ill. Feb. 3, 2011); *see also Bonny*, 3 F.3d at 160. While a "routine claim of general inconvenience or added expense is not sufficient to defeat an otherwise valid forum selection clause," s*ee Sayles*, 2011 WL 382875, at *3, a forum selection clause should not be enforced where it would deprive, in practical effect, a litigant of

---

[2]      Though it dealt with an arbitration clause, *O'Quinn* is still on-point, as an arbitration agreement "is, in effect, a specialized kind of forum selection clause . . . ." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974).

his or her day in court. *M/S Bremen*, 407 U.S. at 18; *Sayles*, 2011 WL 382875, at *3 (declining to enforce forum selection clause where litigating the case in Pennsylvania, rather than Illinois, would be "gravely difficult and inconvenient" to the plaintiff); *see also Aral v. EarthLink, Inc.*, 134 Cal. App. 4th 544, 561 (Cal. Ct. App. 2005) ("a forum selection clause that requires a consumer to travel 2,000 miles to recover a small sum is not reasonable"); *see also* 14 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3803.1 (3d ed. 1998).

In this case, there is no question that the forum selection clause is horribly one-sided and, if enforced, would deprive the Plaintiffs of their day in court. Generally speaking, Malta is located more than 4,500 miles from the United States—over twice the travel distance that was found to be unreasonable in *Aral*. Specifically, the distance to travel from Maryland to Malta is approximately 4,794.1 miles, compared with only 548.5 miles to Chicago. (The Declaration of Ari J. Scharg is attached hereto as Exhibit A, ¶ 4.) A similar 4,742.8 miles separate Pennsylvania and Malta, whereas the trip to Chicago is only 568 miles. *Id*. And from Texas, a Plaintiff would have to travel 5,927.2 miles to get to Malta but only 792.5 miles to come to Chicago. *Id*.

The difference in airfare is also staggering. A flight from Maryland, Pennsylvania, or Texas to Chicago currently ranges in price from $96 to $556, round trip. *Id*. This compares to a range from $896 to over $6,092 for a flight to Malta.[3] *Id*. Spending that type of money is even more unreasonable in light of Maltese law, which prohibits litigants from bringing class actions.

---

[3] This is especially so in light of the goal of class actions generally to provide redress for many consumers who, individually, suffer little harm. *See, e.g., Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device"); *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30").

(*See,* European Union Executive Summary and Overview of the National Report for Malta,[4] a copy of which is attached hereto as Exhibit B, at 5–6) ("The concepts of class actions, collective claims and public interest litigation are alien to Maltese law.") Thus, enforcing the clause would require the Plaintiffs to spend thousands of dollars and travel more than 4,500 miles just to recoup an individual claim of $29.95.

Uniblue's forum selection clause therefore operates as an unlawful exculpatory clause. *Time Warner Sports Merch. v. Chicagoland Processing Corp.*, 974 F. Supp. 1163, 1175 (N.D. Ill. 1997) ("An exculpatory clause cannot protect persons from the results of their willful and wanton misconduct"). As this case alleges fraud against Uniblue, (SAC ¶¶ 1, 4, 21, 23, 36, 38, 40, 41, 42, 66–78, 93–121), requiring Plaintiffs to bring their consumer claims in Malta would effectively, and improperly, shield Uniblue for its wrongful acts.

It is thus unsurprising that no Court has ever, in the context of a consumer class action, enforced a forum selection clause requiring the Plaintiffs to book passage across the Atlantic Ocean to pursue their claims. While Uniblue cites repeatedly to the decision reached in *Carnival Cruise Lines*, that case offers it little help.[5] In *Carnival*, the Supreme Court upheld a forum selection clause designating Florida as the state where any claims were to be litigated. Central to the Court's analysis was the fact that the provision did not deprive the plaintiffs of their day in

---

[4]    The Court may properly consider this Executive Summary because "[i]n determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1.

[5]    Nor do the cases of *Nw. Nat. Ins. Co. v. Donovan*, 916 F.2d 372 (7th Cir. 1990) and *Paper Exp., Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753 (7th Cir. 1992) bear resemblance to the present action. The parties challenging enforcement of a forum selection clause in those cases were "wealthy tax-shelter investors" and "sophisticated businesses engaged in international commerce." *Nw. Nat. Ins. Co.*, 916 F.2d at 378; *Paper Express* 972 F.2d at 758. They were not consumers with $29.95 fraud claims. Moreover, in *Paper Express*, an agent in Canada signed the contract containing a forum selection clause after negotiations, 972 F.2d at 754, and in *Northwestern*, the parties were arguing over venue transfer from Texas to Wisconsin, *Nw. Nat. Ins. Co.,* 916 F.2d at 373—not Texas to Malta.

Court, there was no bad faith on the Defendant's part in selecting Florida, and the Plaintiffs had introduced no evidence to show Florida would prove to be a hardship. *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 590−590 (1991). Tellingly, the Court put its prior decision in *M/S Bremen* into context, explaining that the *M/S Bremen* court had merely cautioned against a "hypothetical agreement between two Americans to resolve their essentially local disputes in a remote alien forum." *Id.* at 586.

In this case, Uniblue's provision calling for the case to be heard in Malta would deprive the Plaintiffs of their day in court, evidence of Uniblue's bad faith abounds, and the record demonstrates that Malta is far more remote and alien than Florida. Moreover, this is hardly a hypothetical agreement between two Americans. Rather, Uniblue is a foreign company that has intentionally availed itself of the U.S. market and harmed U.S. consumers in the process.

As a final point here, and contrary to Uniblue's assertion that Maltese law would uphold the forum selection clause at issue, it is worth noting that the law of Malta and the EU expressly recognizes that, in the context of consumer disputes, it is improper to require an aggrieved consumer to travel outside his or her country of domicile to litigate minor claims.[6]

---

[6]     Notably, under EU law (which Uniblue claims applies to Malta):
A consumer may bring proceedings against the other party to a contract either in the courts of the Contracting State in which that party is domiciled or in the courts of the Contracting State in which he is himself domiciled . . . Proceedings may be brought against a consumer by the other party to the contract only in the courts of the Contracting State in which the consumer is domiciled . . . .

> The provisions of this Section may be departed from only by an agreement:
> 1.     which is entered into after the dispute has arisen; or
> 2.     which allows the consumer to bring proceedings in courts other than those indicated in this Section; or
> 3.     which is entered into by the consumer and the other party to the contract, both of whom are at the time of conclusion of the contract domiciled or habitually resident in the same Contracting State, and which confers jurisdiction on the courts of that State, provided that such an agreement is not contrary to the law of that State.

(Council Regulation No. 44/2001, arts. 16-17, 2001 O.J. (L012) 1, 7 (EC), attached hereto as Exhibit C).

Accordingly, enforcement of Uniblue's forum selection clause would actually strip the Plaintiffs of their day in court and would insulate Uniblue from liability. This Court should deny Uniblue's motion as a result.

**2.     The procedure used to impose the forum selection clause is marred by evidence of fraud and overreaching.**

Uniblue's forum selection clause suffers from procedural unconscionability as well. "Procedural unconscionability consists of some impropriety during the process of forming the contract depriving a party of meaningful choice." *Frank's Maint. & Eng'g, Inc. v. C.A. Roberts Co.,* 86 Ill. App. 3d 980, 989 (1st Dist. 1980)). Likewise, forum selection clauses may be invalid where there is evidence that the party seeking enforcement obtained the other party's accession to the forum clause by "fraud or overreaching." 14 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3803.1 (3d ed. 1998); *Carnival Cruise Lines*, 499 U.S. at 595 ("It bears emphasis that forum-selection clauses contained in form passage contracts are subject to judicial scrutiny for fundamental fairness").

The facts of this case expose Uniblue's overreaching. Not only did Uniblue select Malta, a remote alien forum, to discourage legitimate claims, Uniblue obtains consent for the forum selection clause under dubious circumstances. Uniblue's EULA states that for the "Evaluation Copy" of the software (the version that apparently provides the diagnostic test), no forum selection clause applies. (EULA, Dkt. No. 62-1, Ex. A at ¶ 6.) Rather, the forum selection clause, ¶ 18 of the EULA, only comes into play when the full version of the software is purchased. *Id*. But Uniblue designs the diagnostic test/Evaluation Copy to produce false results that scare "customers" into believing that only the full version of the software can fix their "damaged" computers (and thereby forcing them into becoming bound by the EULA's forum selection clause). Moreover, the terms are not re-shown to customers who "purchase" the full version, who

must recall what they viewed prior to the "free"[7] scan. Such tactics, while perhaps insufficient on

their own to qualify as duress, strongly suggest a level of overreaching such that the Plaintiffs

were deprived of a meaningful choice.

### 3. Enforcing the forum selection clause would offend public policy under both the Illinois Consumer Fraud and Deceptive Business Practices Act and the Electronic Funds Transfer Act.

Uniblue's forum selection clause also violates public policy. When combined with its

Maltese choice of law clause, it purports to waive rights and remedies conferred on consumers

under the ICFA and EFTA—both of which contain express anti-waiver provisions. *See* ICFA,

815 ILCS 505/10c ("Any waiver or modification of the rights, provisions, or remedies of this Act

shall be void and unenforceable"); *see also* EFTA, 15 U.S.C. § 1693l ("No writing or other

agreement between a consumer and any other person may contain any provision which

constitutes a waiver of any right conferred or cause of action created by this subchapter.") These

"anti-waiver provisions . . . ma[k]e clear that the public policy of these laws should not be

thwarted." *Bonny*, 3 F.3d at 160–61.

Forcing Plaintiffs to litigate this lawsuit in Malta would subvert their rights under both

statutes. In particular, while the ICFA allows Plaintiffs to recover attorneys' fees and punitive

damages, 815 ILCS 505/10a, Maltese law expressly prohibits them. (Ex. A, at 6.) Thus,

enforcing the forum selection clause would deprive Plaintiffs of the right to recover remedies

specifically afforded under the law. This alone is enough to find that the forum selection clause

is unenforceable. *See Tortoriello v. Gerald Nissan of N. Aurora, Inc.*, 379 Ill. App. 3d 214, 238

(2d Dist. 2008) (holding that the punitive damages disclaimer in an arbitration clause was void

---

[7]    *See Harris v. comScore, Inc.*, No. 11 C 5807, 2011 WL 4738357, at *2 (N.D. Ill. Oct. 7, 2011) ("[W]hen products are 'free' and users are invited to download them in the absence of reasonably conspicuous notice that they are about to bind themselves to contract terms, the transactional circumstances cannot be fully analogized to those in the paper world of arm's-length bargaining") (citing *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 32 (2d Cir. 2002)).

and unenforceable as it purported to exclude a form of relief authorized by the ICFA). Moreover, as Maltese law prohibits class action lawsuits, Plaintiffs would be stripped of their express right to bring class actions under the EFTA. *See* 15 U.S.C. § 1693m(a)(2)(B). Therefore, the forum selection clause violates unwaivable Illinois state and federal public policy.[8]

### 4. Uniblue's ability to enforce the forum selection clause expired for each Plaintiff a year after they purchased or last renewed their respective licenses.

Even if the Court *could* properly enforce the forum selection clause (it cannot), Uniblue is incorrect when it asserts, "the forum selection clause applies to all of Plaintiffs' claims." (Def. Mot., Dkt. No. 62, at 8.) By its own terms, the EULA expired one year after the date on which each Plaintiff purchased or last renewed their license for the software. Thus, Uniblue may not rely on the now-expired forum selection clause as a basis to dismiss this lawsuit.

"The intent of the parties must be determined from the plain and ordinary meaning of the language of the contract, unless the contract is ambiguous." *Henderson v. Roadway Express*, 308 Ill. App. 3d 546, 548 (4th Dist. 1999). Here, the plain language of the EULA indicates that the forum selection clause has expired: "*The Term of this License is for a period of one year from the date of purchase . . . .*" (Attard Decl., Dkt. 62-1, Ex. A, ¶ 14) (emphasis added.) Further, the EULA expressly states that only some of its terms will survive expiration: "[t]he terms of this Agreement which are *intended* to survive expiration or termination shall remain in effect." (*Id*) (emphasis added). For example, Uniblue intended for the indemnity provision to survive expiration, as Paragraph 11 states, "*Your obligations under this section shall survive the expiration or termination of this Agreement.*" (*Id.* at ¶ 11) (emphasis added.) The forum selection clause, on the other hand, contains no similar language or any indication that it is intended to

---

[8] Of course, forcing consumers to fly to Malta or any other foreign nation would set a dangerous precedent under which unscrupulous companies could take up foreign residence in order to cheat U.S. consumers and then hide behind similarly unfair forum selection provisions.

survive expiration of the EULA. (*See Id*. at ¶ 18.)

As Uniblue admits that each of the Plaintiffs purchased RegistryBooster over a year ago, the forum selection clause in each of their contracts has expired—depriving Uniblue of its ability to invoke it as against any of them. At best for Uniblue, the forum selection clause is ambiguous and should be construed against Uniblue as the drafter of the contract. "Under Illinois law, a contract is deemed "ambiguous when its terms are reasonably capable of interpretation in more than one way."" *Rawat v. Navistar Int'l Corp*., 2012 WL 37110, at *8 (N.D. Ill. Jan. 4, 2012) (quoting *Thompson v. Amoco Oil Co.*, 903 F.2d 1118, 1120 (7th Cir. 1990)). It is well established that ambiguous contracts must be construed *against the drafter* of the language. *Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 115 Ill. 2d 482, 493 (Ill. 1987).[9] Accordingly, Uniblue lacks authority under the EULA's own terms to enforce the forum selection clause at this time.[10]

As a result, because the forum selection clause: (1) would deprive Plaintiffs of their day in court, (2) evinces an intent to strip Plaintiffs of the ability to bring legitimate claims, (3) exculpates Uniblue for its unlawful conduct, (4) was obtained through overreaching, (5) offends federal and state public policy, and (6) is expired on its face, this Court should refuse to enforce it against any of the Plaintiffs here.

[9]     Notably, the EULA is a contract of adhesion as it is "a contract entered into without any meaningful negotiation by the party with inferior buying power" and, as such, is "particularly susceptible to the rule that ambiguities will be construed against the drafter." *Chase Bank USA, N.A. v. Swanson*, 2011 WL 529487, at* 5 (N.D. Ill. Feb. 4, 2011) (citing 11 Williston on Contracts § 32:12 (4th ed. 2010)).

[10]     Whether Uniblue even obtained consent from each Plaintiff is also at issue. While Mr. Attard testifies that users downloading RegistryBooster must first "click" a button to show that they agree to the EULA, (Attard Decl., Dkt. 62-1, Ex. A, ¶ 8), he admits that Uniblue has no record showing that Plaintiffs Berkoski or Webb ever purchased RegistryBooster. (*Id.* at ¶¶ 9, 11.) Instead, according to Mr. Attard, Plaintiff Berkoski purchased a different product called "PowerSuite," (*Id.* at ¶ 9), and Plaintiff Webb *might* have purchased a product called "DriverScanner" (*Id.* at ¶ 11). While Plaintiffs dispute this testimony, these admissions doom Uniblue's motion—no evidence has been introduced to demonstrate, or even suggest, that purchasers of "PowerSuite" or "DriverScanner" were ever required to agree to the EULA before downloading those products.

**B.      Uniblue Enjoys Sufficient Contacts With Illinois To Confer Jurisdiction.**

Perhaps recognizing the unreasonableness of its forum selection clause, Uniblue protests this Court's jurisdiction over it. (Def. Mot. at 11–14.) Uniblue asserts that it has "no presence in Illinois, and did not even enter a contract with an entity that has such a presence related to Plaintiffs' claims against Uniblue." (Def. Mot. at 13.) Any such attacks fail. Plaintiffs need to show that personal jurisdiction would be proper in the forum's state court, *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002), and that "maintenance of the suit [would] not offend" principles of due process. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Both requirements are met here. First, Illinois's long-arm statute affords jurisdiction over "[a]ny person, whether or not a citizen of this State, who in person or through an agent" transacts business in Illinois or commits a tortious act in Illinois. 735 ILCS 5/2-209(a). Second, due process requirements are satisfied where the defendant has sufficient contacts with the state such that the defendant could reasonably anticipate being sued in that State's courts. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). As shown below, Uniblue cannot seriously contend due process prohibits it from being sued in this Court.

"A defendant can be subject to the jurisdiction of an Illinois court under the conspiracy theory if: (1) the defendant was part of an actionable conspiracy; and (2) a co-conspirator performed a substantial act in furtherance of the conspiracy in Illinois." *Markarian v. Garoogian*, 767 F. Supp. 173, 178 (N.D. Ill. 1991) (citing *Textor v. Board of Regents*, 711 F. 2d 1387, 1393 (7th Cir. 1983)). "[T]hose that join a conspiracy the purpose of which is to commit fraud or other tort in Illinois should, in some circumstances, reasonably foresee the possibility of being haled into court here." *Olson v. Jenkens & Gilchrist*, 461 F. Supp. 2d 710, 724 (N.D. Ill. 2006).

Plaintiffs allege that Uniblue conspired with cleverbridge, Inc. and cleverbridge AG to

perpetuate a fraud on consumers in the United States. (SAC ¶¶ 113–121.) Plaintiffs specifically plead that cleverbridge, with a location in Chicago, is the exclusive merchant-reseller of Uniblue products in the U.S. (SAC ¶¶ 20.) Uniblue's own affidavits confirm as much, albeit in veiled reference. (Attard Decl., Dkt. No. 62-1, at ¶ 2) ("Uniblue designs and licenses certain software products that are sold through a third-party vendor on the internet.") Plaintiffs go even further and allege that the relationship between Uniblue and cleverbridge is one of interdependence, with each party working together to "fill vital roles in the perpetuation of the scam." (SAC ¶ 19.)

Hence, although it now attempts to downplay its connection with its U.S. reseller, (Def. Mot. at 11–12), Uniblue surely anticipated being haled into court here, as this District is the sole situs of its interaction with U.S. customers. *See Asahi Metal Indus. Co., Ltd. v. Sup. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 112 (1987) (contacts are sufficient where Defendant establishes "channels for providing regular advice to customers in the forum State, *or marketing the product through a distributor* who has agreed to serve as the sales agent in the forum State") (emphasis added); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (a defendant submits to a court's specific jurisdiction when it "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum . . . and those products subsequently injure forum consumers") (quoting *World-Wide Volkswagen*, 44 U.S. at 297–98). Because Uniblue conducts all of its U.S. business through its Illinois reseller located in this District, it has "indicate[d] an intent or purpose to serve the market in the forum," and has submitted itself to the Court's jurisdiction. *Asahi*, 480 U.S. at 112.

All of the elements required for a conspiracy claim are present: an agreement between two or more parties to accomplish an unlawful purpose and at least one tortious act by one of the conspirators in furtherance of the agreement. *Hecny Transp., Inc. v. Chu*, 1999 WL 134202, at *2

(N.D. Ill. Mar. 8, 1999); (SAC ¶¶1–33, 113–121.) It follows then that Uniblue should reasonably expect to be haled into Court here, where its co-conspirator resides and maintains its corporate headquarters. *Stauffacher v. Bennett*, 969 F.2d 455, 459 (7th Cir. 1992) ("If through one of its members a conspiracy inflicts an actionable wrong in one jurisdiction, the other members should not be allowed to escape being sued there by hiding in another jurisdiction."). Because Uniblue conspired with cleverbridge to defraud consumers in this District, the Court has jurisdiction.

Finally, the Court has jurisdiction over Uniblue generally. General jurisdiction is found "only where the defendant conducts continuous and systematic general business within the forum state." *GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009). "[T]he defendant's conduct and connection with the forum must be such that it should reasonably anticipate being haled into court there." *Id.* Uniblue regularly conducts business in Illinois. Again, every Uniblue product bought by U.S. consumers is processed by a corporate entity located in this District. (SAC ¶¶ 20.)

Citing *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 426 (7th Cir. 2010) and *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010), Uniblue charges that operation of a public website directed at this forum is insufficient to establish general jurisdiction. (Def. Mot. at 12.) Uniblue's downplaying of the allegations aside, it is the continuous and systematic business dealings with its only U.S. reseller domiciled in this District that vests the Court with general jurisdiction—not Uniblue's website. Thus, Uniblue's motion to dismiss for lack of personal jurisdiction should be denied.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiffs' respectfully request that this Court deny Defendant Uniblue Systems, Ltd.'s Motion to Dismiss in its entirety.

Respectfully submitted,

Dated: February 2, 2012

**MARY WEBB, JOSEPH BERKOSKI,
AND STACY PLUEBELL,** individually and on
behalf of all others similarly situated,

By: /s/ Ari J. Scharg
     One of Plaintiffs' Attorneys

Jay Edelson
Ari J. Scharg
Chandler R. Givens
EDELSON MCGUIRE, LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378
jedelson@edelson.com
ascharg@edelson.com
cgivens@edelson.com

## CERTIFICATE OF SERVICE

I, Ari J. Scharg, an attorney, certify that on February 2, 2012, I served the above foregoing ***Plaintiffs' Response in Opposition to Defendant Uniblue Systems Ltd.'s Motion to Dismiss the Second Amended Complaint for Improper Venue and Lack of Personal Jurisdiction*** by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this 2nd day of February, 2012.


                                                  /s/ Ari J. Scharg