**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| MARY WEBB, JOSEPH BERKOSKI, and STACY PLUEBELL, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.: 1:11-cv-04141 |
| v. | ) ) | Honorable Joan H. Lefkow |
| CLEVERBRIDGE, INC., a Delaware Corporation, CLEVERBRIDGE AG, a German company, and UNIBLUE SYSTEMS, LTD., a Maltese company, | ) ) ) ) ) | Magistrate Judge Denlow |
| Defendants, | ) ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PRELIMINARY**
**APPROVAL OF CLASS ACTION SETTLEMENT BETWEEN PLAINTIFFS**
**AND DEFENDANTS CLEVERBIRDGE, INC. AND CLEVERBRIDGE A.G.**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

I. NON-SETTLING PARTIES MAY NOT OBJECT TO A SETTLEMENT
ABSENT A SHOWING OF PLAIN LEGAL PREJUDICE. ............................................. 2

II. UNIBLUE HAS NO STANDING TO CHALLENGE THE SETTLEMENT OR
CONTEST CERTIFICATION OF THE SETTLEMENT CLASS BECAUSE IT
HAS SUFFERED NO PLAIN LEGAL PREJUDICE. ...................................................... 3

    A.    Uniblue's objections under Rule 23—and insistence that it be permitted
to contest certification of the Settlement Class—are improperly based
upon a perceived tactical disadvantage. ................................................................ 4

    B.    Uniblue effectively admits that the proposed settlement will not affect any
indemnification rights it may have against the Cleverbridge Defendants. ............. 8

    C.    To the extent it even applies here, the Contribution Act does not give
Uniblue standing to object to the Settlement. ..................................................... 10

        1.    The Contribution Act does not apply to Plaintiffs' claims, because
each claim relies upon Defendants' intentional conduct. ......................... 10

        2.    Even if the Contribution Act does apply, the Court's finding that the
settlement was reached in good faith would necessarily protect
Uniblue's financial interests as a non-settling party ............................... 11

III. UNIBLUE'S OBJECTION TO CLASS CERTIFICATION SHOULD BE OVERRULED
BECAUSE MANAGEABILITY IS NOT A CONCERN WHEN CERTIFYING A
CLASS FOR SETTLEMENT PURPOSES .................................................................... 13

CONCLUSION ..................................................................................................................... 15

## TABLE OF AUTHORITIES

**United States Appellate Court Cases:**

*Alumax Mill Products, Inc. v. Congress Financial Corp.*, 912 F.2d 996 (8th Cir. 1990) .............3

*Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242 (7th Cir. 1992) ........................................2, 3, 5, 8

*In re Beef Ind. Antitrust Litig.,* 607 F.2d 167 (5th Cir. 1979) .......................................5

*In re Vitamins Antitrust Class Actions,* 215 F.3d 26 (D.C. Cir. 2000) ..........................5

*Mayfield v. Barr,* 985 F.2d 1090 (D.C. Cir. 1993) ........................................5

*N. Am. Van Lines, Inc. v. Pinkerton Sec. Sys., Inc.*, 89 F.3d 452 (7th Cir. 1996) .................11 n.3

*Quad/Graphics, Inc. v. Fass,* 724 F.2d 1230 (7th Cir. 1983) ........................................2, 3, 5, 8, 9

*Smith v. Arthur Andersen LLP,* 421 F.3d 989 (9th Cir. 2005) ........................................5

**United States District Court Cases:**

*Altman v. Liberty Equities Corp.*, 545 F.R.D. 620 (S.D.N.Y. 1972) ........................................8, 9

*Cason-Merenda v. Detroit Med. Ctr.*, No. 06-15601, 2010 WL 446452
(E.D. Mich. Jan. 28, 2010) ........................................7

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545
(N.D. Ga. 2007) ........................................5

*Gates v. Rohm & Haas Co.*, 248 F.R.D. 434 (E.D. Pa. 2008) ........................................5, 12

*In re Bulk (Extruded) Graphite Products Antitrust Litig.*, No. CIV. 02-6030 (WHW),
2006 WL 891362 (D.N.J. Apr. 4, 2006) ........................................6

*In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2010 WL 3070161
(E.D. Mich. Aug. 2, 2010) ........................................6

*In re Ulz*, 401 B.R. 321 (Bankr. N.D. Ill. 2009) ........................................10

*Schoenbaum v. E.I. DuPont De. Nemours & Co.*, No. 4:05-CV-01108,
2009 WL 4782082 (E.D. Mo. Dec. 8, 2009) ........................................4, 6, 7

*Wainwright v. Kraftco Corp.,* 53 F.R.D. 78 (N.D. Ga. 1971) ........................................5

**State Supreme Court Cases:**

*Gerill Corp. v. Jack L. Hargrove Builders, Inc.,* 538 N.E.2d 530 (1989) ....................10

*Pasquale v. Speed Prods. Engineering*, 166 Ill. 2d 337 (1995) ....................................................12

*Ziarko v. Soo Line R.R.*, 161 Ill. 2d 267, 641 N.E.2d 402 (Ill. 1994) ...........................................10

**State Appellate Court Cases:**

*Carl Sandburg Vill. Condo. Ass'n v. First Condo. Dev., Inc.*, 557 N.E.2d 246
(Ill. App. Ct. 1990) ..........................................................................................................10

*Wreglesworth v. Arctco, Inc.*, 740 N.E.2d 444 (Ill. App. Ct. 2000) ............................................12

**Federal Rules:**

Fed. R. Civ. P. 23(e)(5) ..................................................................................................................2

**State Statutes:**

740 ILCS 100/1 *et seq.*...................................................................................................................4

**Other Authorities:**

Manual for Complex Litigation Second, Moore's Federal Practice § 30.46 (1986) ......................2

Newberg on Class Actions § 11:55 (4th ed.) ................................................................................3

## INTRODUCTION

This case challenges the Defendants' alleged use of "scareware"—software that identifies phantom computer errors designed to trick customers into purchasing additional programs to "fix" the non-existent problems. As set forth in their moving papers, Plaintiffs Mary Webb, Joseph Berkoski, and Stacy Pluebell (the "Plaintiffs") and Defendants cleverbridge, Inc. and cleverbridge AG (the "Cleverbridge Defendants") (collectively, the "Settling Parties") seek preliminary approval of a partial class action settlement of this matter. (Pls. Mem. at 1 [Dkt. No. 77].) Defendant Uniblue Systems, Ltd. ("Uniblue") has "objected" to the settlement through its response to Plaintiffs' motion for preliminary approval. As explained below, however, Uniblue has provided no valid basis to lodge an objection to the settlement, nor can it.

In all, the settlement process—including the Court's certification of the Settlement Class for settlement purposes—*only* involves Plaintiffs and the putative class, on the one hand, and the Cleverbridge Defendants, on the other. Accordingly, the proposed Settlement Agreement specifically excludes Defendant Uniblue from its scope, seeks resolution of the litigation only amongst the Settling Parties, and expressly states the Plaintiffs' intent "to continue to pursue their claims and the claims of the putative class against Uniblue…." (Settlement Agreement at 2, 3, 7 [Dkt. No. 77-2].)

Undeterred, Uniblue believes that it should be allowed to police the approval process, challenge certification of the Settlement Class on Rule 23 grounds, and demand that "the Court [*be required*] to scrutinize the settlement conditions with appropriate input from Uniblue." (*See* Uniblue Resp. at 4-5 [Dkt. No. 82].) In support, Uniblue implies that the Court's ruling made with respect to the *Settlement Class* could somehow affect later litigation concerning certification of the litigation class, that the *absence* of terms affecting Uniblue within the Settlement

Agreement might inexplicably foreclose its own purported indemnification rights, and that a
"*court-approved* good faith settlement" could damage its ability to seek contribution from the
Cleverbridge Defendants. (*See* Uniblue Resp. at 5, 14, 15.)

Fortunately for the Settling Parties who seek to put the dispute to rest as between them,
Uniblue cannot rely on implication and innuendo to derail the Settling Parties' efforts because
Uniblue has no standing to object to the Settlement Agreement. This Court should reject
Uniblue's gloss over the applicable law, allow the Settling Parties to move forward with the
settlement process, and direct Uniblue to expend its own efforts where appropriate: in defense of
the class action litigation continuing against it.

## ARGUMENT

### I.    NON-SETTLING PARTIES MAY NOT OBJECT TO A SETTLEMENT ABSENT A SHOWING OF PLAIN LEGAL PREJUDICE.

It is axiomatic that in order to object to the proposed Settlement Agreement, Uniblue
must have standing. "The general rule, of course, is that a non-settling party does not have
standing to object to a settlement between other parties." *Agretti v. ANR Freight Sys., Inc.*, 982
F.2d 242, 246 (7th Cir. 1992); *see* Fed. R. Civ. P. 23(e)(5) ("Any *class member* may object to the
[settlement] proposal…") (emphasis added). In the class action context, this long-standing rule
recognizes that "[i]n complex litigation with a plaintiff class, 'partial settlements often play a
vital role in resolving class actions.'" *Id.* (quoting 1-Part A Manual for Complex Litigation
Second, Moore's Federal Practice § 30.46 (1986)); *see also Quad/Graphics, Inc. v. Fass*, 724
F.2d 1230, 1233 (7th Cir. 1983) (the rule against standing to object for non-settling defendants is
designed to encourage settlements). Accordingly, and in contrast to Uniblue's complete
downplay of its burden, the Seventh Circuit has unambiguously held that "a non-settling party
*must* demonstrate plain legal prejudice in order to have standing to challenge a partial

settlement." *Id.* at 1233 (emphasis added) *compare with* Uniblue Resp. at 4 (misstating standard by asserting that a non-settling party has standing if a settlement "might cause plain legal prejudice"); *see also Agretti*, 982 F.2d at 247 ("We reject any suggestion . . . that standing to object to a settlement in a class action situation by a non-settling party requires a different standard than plain legal prejudice.").

A non-settling party does not suffer plain legal prejudice simply because the settlement creates a perceived tactical disadvantage. *See Quad/Graphics*, 724 F.2d at 1233 (recognizing that "[s]ome disadvantage to the remaining defendants is bound to occur and may, in fact, be the motivation behind the settlement"); *Agretti*, 982 F.2d at 447 (citing *Quad/Graphics*, 724 F.2d at 1233-34). Rather, such prejudice is reserved for situations where "[a] settlement *strips* the [non-settling] party of a legal claim or cause of action," or similarly *cuts off* "a party's contract rights or a party's ability to seek contribution or indemnification." *Agretti*, 982 F.2d at 447 (emphasis added) (citing *Quad/Graphics*, 724 F.2d at 1232); *Alumax Mill Products, Inc. v. Congress Financial Corp.*, 912 F.2d 996, 1002 (8th Cir. 1990); *see* 4 Newberg on Class Actions § 11:55 (4th ed.) ("[N]onsettling defendants in a multiple defendant litigation context . . . may object to any [settlement] terms that *preclude* them from seeking indemnification from the settling defendants) (emphasis added). The required showing recognizes that "just as a court has no justification for interfering in the plaintiff's initial choice of the parties it will sue . . . [a] court should not intercede in the plaintiff's decision to settle with certain parties, unless a remaining party can demonstrate plain legal prejudice." *Quad/Graphics*, 724 F.2d at 1233.

## II. UNIBLUE HAS NO STANDING TO CHALLENGE THE SETTLEMENT OR CONTEST CERTIFICATION OF THE SETTLEMENT CLASS BECAUSE IT HAS SUFFERED NO PLAIN LEGAL PREJUDICE.

Notably, Uniblue never discusses its standing (or lack thereof) to object to the settlement. (*See* Uniblue Resp. at 15 (merely asserting that "[t]he Court should afford Uniblue an adequate

opportunity to be heard….").) Instead, Uniblue takes issue with the settlement on the grounds that its supposed "rights" may be affected in three ways: (A) by a "decision on certification of a settlement class" that could potentially impact "certification of a class for litigation purposes" (Uniblue Resp. at 5); (B) by limiting Uniblue's ability to seek indemnification against the Cleverbridge Defendants in light of the Settlement (*id.* at 4); and (C) by depriving it of the supposed right "to limit its obligation to satisfy the amount of a damages award" pursuant to the Joint Tortfeasor Contribution Act (the "Contribution Act"), 740 ILCS 100/1 *et seq.* (Uniblue Resp. at 4).[1] Uniblue is wrong.

As explained below, none of its supposed concerns are legitimate, and even if they were, none would amount to plain legal prejudice. Uniblue lacks standing to object to the settlement and thus cannot contest certification of the Settlement Class.

### A. Uniblue's objections under Rule 23—and insistence that it be permitted to contest certification of the Settlement Class—are improperly based upon a perceived tactical disadvantage.

Faced with a situation experienced by every non-settling party in a multi-defendant class action, Uniblue claims that it should be allowed to object to certification of the settlement class. (Uniblue Resp. at 5 (referring to Section II of its brief, which raises a litany of "reasons that [it] *will* contend make class certification improper for litigation purposes" under Rule 23) (emphasis added).) In support, Uniblue cites to a single case from the Eastern District of Missouri and misleadingly suggests that "other district courts in these circumstances have held that a non-settling party should be heard on class certification issues when there are pending motions seeking class certification both for litigation [and] settlement purposes." (*Id.* (citing *Schoenbaum v. E.I. DuPont De. Nemours & Co.*, No. 4:05-CV-01108, 2009 WL 4782082, at *10-11 (E.D.

---

[1]     Uniblue incorrectly refers to the Act as the "Contribution Among Joint Tortfeasors Act." (see 740 ILCS 100/0.01)("This Act may be cited as the Joint Tortfeasor Contribution Act.")

Mo. Dec. 8, 2009).) But even a cursory review of Uniblue's argument—including the one

outlying and distinguishable case it replies upon—demonstrates its weakness.

First, courts, including in the lone case cited by Uniblue, routinely characterize and reject

non-settling defendants' concerns under Rule 23, similar to those raised here by Uniblue (*see*

Uniblue Resp. at § II), as improper objections to a proposed partial settlement. In *Columbus*

*Drywall & Insulation, Inc. v. Masco Corp.*, for example, Masco—a non-settling defendant—

voiced its concern "that the Court should defer preliminary approval of the settlement class until

it has reached a decision concerning plaintiffs' motion to certify the litigation class." 258 F.R.D.

545, 552 (N.D. Ga. 2007). Before rejecting Masco's suggestion outright, the court first

confirmed that—identical to the governing law of this Circuit, set forth in *Quad/Graphics* and

*Agretti* (*see supra* § I)—"a non-settling defendant does not have standing to object to a class

action settlement . . . [absent a showing of] 'plain legal prejudice.'" *Id.* (citing *In re Beef Ind.*

*Antitrust Litig.,* 607 F.2d 167, 172 (5th Cir. 1979); *Smith v. Arthur Andersen LLP,* 421 F.3d 989,

998 (9th Cir. 2005); *Mayfield v. Barr,* 985 F.2d 1090, 1092-93 (D.C. Cir. 1993); *In re Vitamins*

*Antitrust Class Actions,* 215 F.3d 26, 31 (D.C. Cir. 2000); *Wainwright v. Kraftco Corp.,* 53

F.R.D. 78, 81 (N.D. Ga. 1971)). Then, recognizing that "Masco's concerns appear to be mainly

strategic," the court simply concluded that "certification of the settlement class will not have a

preclusive effect on defendant Masco in contesting the litigation class." *Id.* (additionally noting

that the court was not "endorsing any evidence or arguments" pertaining to the *litigation* class

through preliminary approval of the *settlement* class).

This has been the approach consistently re-traced throughout the federal judiciary. *See,*

*e.g.*, *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 436 (E.D. Pa. 2008) (addressing "*identical*"

litigation and proposed settlement classes, and holding that the court's order granting preliminary

approval of the settlement class "is without prejudice to the non-settling defendants' right to

challenge class certification"); *In re Bulk (Extruded) Graphite Products Antitrust Litig.*, CIV. 02-

6030 (WHW), 2006 WL 891362, at *1 (D.N.J. Apr. 4, 2006) (certifying litigation class and

noting the prior approval of partial settlements as to other defendants); *In re Packaged Ice*

*Antitrust Litig.*, 08-MD-01952, 2010 WL 3070161, at *5 (E.D. Mich. Aug. 2, 2010) (agreeing

that "with respect to the preliminary approval of a settlement class in a proposed partial

settlement, there is no prejudice to the non-settling defendants' right to challenge certification of

a litigation class at a later stage of the case"). Accordingly, Uniblue's assertion that the "Law of

the Case doctrine would deter the Court from making inconsistent determinations under Rule 23"

sounds a false alarm. (Uniblue Resp. at 5.) As with those cases cited above, this Court's

certification of the *Settlement Class* for settlement purposes will have no effect, preclusive or

otherwise, on Uniblue's ability to contest certification of the litigation class.[2]

　　　　Second, even the *Schoenbaum* court—cited by Uniblue—followed this approach and

only permitted a non-settling defendant to oppose class certification because of the case's

"somewhat unique circumstances." 2009 WL 4782082, at *10. There, the plaintiffs moved for

preliminary approval of a partial settlement class and the non-settling defendant insisted that "the

---

[2]　　　　Resolution of adversarial class certification issues with respect to Uniblue would
necessarily follow a period of appropriate discovery into Uniblue's conduct as it applies to the
putative class. This would of course come after a denial of Uniblue's pending Motion to Dismiss
(the "Malta Motion") which claims that—notwithstanding the allegation that it deceived
American customers into purchasing RegistryBooster software (not to mention a complete
absence of legal authority supporting its arguments)—all litigation against it must take place in
the island nation of Malta. (*See* Dkt. No. 60.) As set forth in Plaintiffs' Opposition (Dkt. No. 64)
this Court should deny the Malta Motion so that the case may proceed against Uniblue. Further,
and as Plaintiffs intend to raise before the Court, Uniblue's instant response has effectively
waived any Rule 12 defense as to personal jurisdiction. *Mobile Anesthesiologists Chicago, LLC
v. Anesthesia Associates of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010) ("To
waive or forfeit a personal jurisdiction defense, a defendant must give a plaintiff a reasonable
expectation that it will defend the suit on the merits or must cause the court to go to some effort
that would be wasted if personal jurisdiction is later found lacking.").

next step in [the] litigation should be contested certification proceedings on both the settlement and litigation classes." *Id.* In line with the standard discussed above, the court first recognized that even though the defendant characterized its request as a "procedural proposal," the non-settling defendant *was* objecting to the settlement and "[almost certainly did not] have the *right* to involve itself in settlement-related proceedings." *Id.* Nevertheless, the court explained that its own "foremost concern [was] the plodding pace with which [the] litigation was moving forward," and noted that the "[p]laintiffs had been involved in [the] litigation for nearly five years." *Id.* at *11-12. Accordingly, and relying upon its own authority to do so—as opposed to any right/objection asserted by the non-settling defendant—the Court determined that, because "the litigation [had] been pending too long," it was reasonable "to require [p]laintiffs to move forward with litigation class certification…" *Id.* at *11-12.

This case, filed less than a year ago, shares none of the "unique circumstances" addressed in *Schoenbaum*. Rather, and like almost every class action concerning a partial settlement between a plaintiff and less than all of the defendants, this case merely involves a non-settling defendant who is unhappy with a partial settlement. But, because "nothing in the preliminary approval process will prejudge or conclusively resolve the issues raised" in any pending motion for certification of a litigation class, Uniblue's complaints made with respect to the future certification of that *litigation* class are untimely and unfounded. *See Cason-Merenda v. Detroit Med. Ctr.*, No. 06-15601, 2010 WL 446452, at * 1 (E.D. Mich. Jan. 28, 2010); (Uniblue Resp. at 5, (referring to those "reasons [set forth in Section II of its brief] that Uniblue *will contend* make class certification improper for *litigation* purposes…") (emphasis added)). Ultimately, permitting Uniblue to insert itself amongst the Settling Parties' efforts would serve only to discourage partial settlements in multi-defendant class actions and frustrate the plain instructions of the

Seventh Circuit. *See Agretti*, 982 F.2d at 246; *Quad/Graphics*, 724 F.2d at 1233.

> **B.** **Uniblue effectively admits that the proposed settlement will not affect any indemnification rights it may have against the Cleverbridge Defendants.**

Curiously, Uniblue acknowledges that the Settlement Agreement does not expressly affect—much less restrict—its own purported indemnification rights but nonetheless implies that the "Proposed Settlement . . . [*could*] adversely affect . . . [indemnity] rights that Uniblue would otherwise have." (Uniblue Resp. at 13.) In short, Uniblue apparently believes that because the Agreement states the Cleverbridge Defendants expressly "reserve their rights to pursue indemnity claims they may have against [Uniblue]" (Settlement Agreement § V(A)), but is silent as to Uniblue's purported rights to pursue indemnity claims against the Cleverbridge Defendants, its rights may be compromised, presumably giving it standing to object to the settlement. (Uniblue Resp. at 15.) Uniblue is mistaken and its argument strains credulity.

In the seminal *Quad/Graphics* case, the Seventh Circuit addressed circumstances that would—in contrast to those present here—impermissibly *strip* a non-settling defendant of indemnification rights and, accordingly, constitute plain legal prejudice. There, the Seventh Circuit discussed a separate case—*Altman v. Liberty Equities Corp.*, 545 F.R.D. 620 (S.D.N.Y. 1972)—where a "proposed settlement included a provision *barring* the non-settling defendants from pursuing any claim for indemnification or contribution against the settling defendants." *Quad/Graphics*, 724 F.2d at 1232 (emphasis added). The *Altman* court concluded that, because of the *barring provision*, it could not approve the settlement:

> There can be no doubt that this result may be read to cut athwart the policy consideration in favor of settlements of litigations, including class actions. Indeed, from the point of view of the plaintiff and the class which he represents in this case, it is at least theoretically possible that this ruling may work a deprivation of their contemplated partial recovery now of a substantial amount of money. These cogent considerations notwithstanding, I cannot approve of the proposed settlement so long as it contains the bar order. While there may be circumstances in which a court in its discretion should enforce such a bar provision, here I

conclude that to cut off the remaining nine defendants at this early stage of the litigation from their rights of contribution or indemnification would be unjust.

*Quad/Graphics*, 724 F.2d at 1232 (quoting *Altman*, 54 F.R.D. at 625). The Seventh Circuit explained that under such circumstances, "enforcement of the proposed settlement would have prejudiced the non-settling defendants rights to indemnification and contribution . . . [and] based on the objections, the [*Altman*] court refused to accept the settlement, implicitly finding that the non-settling defendants had standing to be heard on the issue." *Id.* The court further explained that *Altman*'s analysis informed the rule that "a non-settling party must demonstrate plain legal prejudice in order to have standing to challenge a partial settlement." *Id.* at 1233.

Here, in contrast and as admitted by Uniblue, the Settlement Agreement contains no provision barring Uniblue from pursuing potential indemnification claims against the Cleverbridge Defendants, and it says *nothing* about Uniblue's indemnification rights—assuming such rights even exist. (*See* Uniblue Resp. at 15.) Indeed, the Settlement Agreement *expressly* excludes Uniblue from the Agreement's scope and does not otherwise shield the Cleverbridge Defendants from any rights Uniblue, or any Excluded Party, might have against them. (*See* Settlement Agreement at 7, 14). Simply put, the fact that the Agreement preserves indemnification rights belonging to the *Cleverbridge Defendants*—who, unlike Uniblue, *are* parties to the proposed Settlement Agreement—does not, by implication, somehow cut off any purported "parallel indemnity rights" of Uniblue. (*See* Uniblue Resp. at 15.) Consequently, the Settlement Agreement has no bearing on Uniblue's concerns regarding its own purported rights and does not cause plain legal prejudice.

> **C.    To the extent it even applies here, the Contribution Act does not give Uniblue standing to object to the Settlement.**

Uniblue cites to no authority showing that a non-settling party's rights under the

Contribution Act also give that party standing to object to a partial class settlement and contest certification of a settlement class. Thus, and even if the Contribution Act applies here (it doesn't), the Court's involvement with the settlement process guarantees that, pursuant to the Act, Uniblue's financial interests will be looked after. Uniblue's concerns are ill-founded.

> ### 1. The Contribution Act does not apply to Plaintiffs' claims, because each claim relies upon Defendants' intentional conduct.

Uniblue's *only* argument that the Contribution Act applies to Plaintiffs' claims is relegated to a single sentence: "Plaintiffs' claims under the ICFA, at a minimum, would be subject to the Contribution Act." (Uniblue Resp. at 14 (citing *Glen Ellyn Pharmacy, Inc. v. Meda Pharmaceuticals, Inc.*, 09 C 4100, 2011 WL 6156800, at *4 (N.D. Ill. Dec. 9, 2011).) But Plaintiffs' ICFA claim—like the rest of the complaint—is grounded by Defendants' *intentional* conduct and accordingly falls outside of the Contribution Act's scope.

Under the Contribution Act, "there is a right of contribution . . . [among] 2 or more persons . . . subject to liability in tort arising out of the same injury to person or property." 740 ILCS 100/2(a). "Illinois courts have held that the phrase 'subject to liability in tort' excludes intentionally tortious conduct." *Glen Ellyn*, 2011 WL 6156800, at *3 (citing *Ziarko v. Soo Line R.R.*, 641 N.E.2d 402, 404 (Ill. 1994); *see also In re Ulz*, 401 B.R. 321, 330 (Bankr. N.D. Ill. 2009) *aff'd sub nom. C&R Mortg. Corp. v. Ulz*, 419 B.R. 793 (N.D. Ill. 2009) ("[T]he Contribution Act does not apply to intentional torts such as fraud.) (citing *Gerill Corp. v. Jack L. Hargrove Builders, Inc.*, 538 N.E.2d 530, 542 (Ill. 1989). Accordingly, "where intent is a required element of a cause of action, a liable tortfeasor will not be able to prevail in an action for contribution." *Glen Ellyn*, 2011 WL 6156800, at *3. Thus, and with respect to claims brought under the ICFA, whether or not the Contribution Act applies depends on whether a complaint seeks to establish that the defendant "intentionally practiced a deceptive act." *Id.* at *4 (quoting

*Carl Sandburg Vill. Condo. Ass'n v. First Condo. Dev., Inc.*, 557 N.E.2d 246, 250 (Ill. App. Ct. 1990)). Accordingly, if an ICFA claim arises from a defendant's *intentional* conduct, then the Contribution Act simply does not apply. *See Id.*

All of Plaintiffs' claims—including their claim under the ICFA—stem from the Defendants' intent to defraud consumers using their "massive, Internet-based scheme."[3] (*See, e.g.*, SAC at ¶¶ 1, 74 (in Plaintiffs' claim under the ICFA, alleging that "Defendants *intend* that Plaintiffs and the Classes rely on their material misrepresentations, omissions, and deception to purchase their worthless product…").) No claim is premised on Defendants' negligent or unintentional conduct. As such, Uniblue has no contribution rights regarding its future liability pursuant to the Contribution Act.

> **2.      Even if the Contribution Act does apply, the Court's finding that the settlement was reached in good faith would necessarily protect Uniblue's financial interests as a non-settling party.**

Finally, and assuming *arguendo* that the Contribution Act does apply, Uniblue cannot rely upon the Act's *protections* as a source of "plain legal prejudice" grounding its objections. Instead, the Contribution Act would allow Uniblue—at the very most—to address whether the settlement was reached in good faith according to the limited factors contemplated by the Act.

Tellingly, Uniblue's chief complaint seems to be that "[f]ollowing a court-approved good faith settlement . . . [it] can *only* reduce its obligation to pay a future judgment 'to the extent of any amount stated in the release…'" (Uniblue Resp. at 14 (quoting 740 ILCS 100/2(c) (emphasis added)).) But the entire point of the Contribution Act's "good faith" requirement is to determine:

> (1) whether the amount paid by the settling tortfeasor was within a reasonable range of the settlor's fair share; (2) whether there was a close personal relationship between the settling parties; (3) whether the plaintiff sued the settlor;

---

[3]      Plaintiffs' claims asserted under breach of contract theory are similarly not implicated by the Contribution Act. *See N. Am. Van Lines, Inc. v. Pinkerton Sec. Sys., Inc.*, 89 F.3d 452, 457 (7th Cir. 1996) (citing collected cases).

and (4) whether a calculated effort was made to conceal information about the circumstances surrounding the settlement agreement.[4]

*Gates*, 2008 WL 4078456, at *9 (discussing "[f]actors . . . considered in determining whether a settlement was made in good faith") (quoting *Wreglesworth v. Arctco, Inc.*, 740 N.E.2d 444, 448-49 (Ill. App. Ct. 2000)). As such, a finding from the Court that the settlement was made in good faith—which is both required under the Contribution Act and posited by Uniblue (*see* Uniblue Resp. at 14)—assures that the amount paid by the Cleverbridge Defendants reasonably approximates their "fair share" of the overall liability. *See id.* That finding moreover ensures that Uniblue will not become a "guarantor of any shortfall that Plaintiffs should have tried to collect from the cleverbridge Defendants." (Uniblue Resp. at 14.)

To that end, Uniblue's reliance on "[t]he Illinois Supreme Court['s express recognition] that the Contribution Act reflects 'the public policy of protecting the financial interests of non-settling parties in a settlement'" is both misplaced and self-defeating. (*See* Uniblue Resp. at 15 (quoting *Pasquale v. Speed Prods. Engineering*, 654 N.E.2d 1365, 1382 (1995).) Namely, the "protection" discussed by the Illinois Supreme Court does not—as Uniblue seems to imply—concern whether a *settling* defendant settles for too little and thus shifts too much of its own "liability onto the shoulders of another."[5] (*See* Uniblue Resp. at 15.) Rather, the Court explained that allowing a *non-settling* party—like Uniblue—to "reduce[] the recovery on any claim against [it] to the extent of any amount stated in the [settling party's] release or covenant . . . ensures that

---

[4] With respect to this final factor, it must be noted that the Settling Parties did anything but conceal the fact that they were entering into a partial settlement of the case. Indeed, prior to execution of the Settlement Agreement, on February 17, 2012, Plaintiffs' counsel—in open court—offered to take Uniblue through the settlement with the Cleverbridge Defendants and even explore the possibility of a global settlement. Uniblue's counsel declined the offer, insisting that Uniblue was going to prevail on the Malta Motion.

[5] Indeed, this unsupported reading is only possible because, amazingly, Uniblue chose to omit the very next sentence following the one it chose to quote. *See Pasquale*, 654 N.E.2d at 1382.

[the non-settling] party will not be required to pay more than its *pro rata* share of the shared liability." *Pasquale*, 654 N.E.2d at 1382. Thus, if this Court finds the settlement was made in good faith (it was), it is the setoff rights guaranteed by the Contribution Act that will, as a matter of course, protect Uniblue from paying more than its "fair share." That setoff is a *protection* for non-settling parties—not, as Uniblue suggests, a prejudicial limitation.

Ultimately, Uniblue laments that the protections of the Contribution Act would "*only*" allow Uniblue to "reduce its obligations to pay a future judgment 'to the extent of any amount stated in the release…" (*See* Uniblue Resp. at 14 (quoting 740 ILCS 100/2(c).) To be sure, Uniblue's argument that the *protections* of the Contribution Act (i.e., permitting a non-settling defendant to reduce recovery on any claim against it by the amount of the settlement) should doubly count as "plain legal prejudice"—in the context of obstructing a class action settlement— stretches the Contribution Act well past its breaking point. This is especially so if and when the Court finds the settlement was reached in good faith. (*See* Uniblue Resp. at 14.) Put simply, Uniblue cannot rely upon its own self-serving and erroneous reading of the Contribution Act as a "backdoor" to object to the Settlement Agreement.

**III.    UNIBLUE'S OBJECTION TO CLASS CERTIFICATION SHOULD BE OVERRULED BECAUSE MANAGEABILITY IS NOT A CONCERN WHEN CERTIFYING A CLASS FOR SETTLEMENT PURPOSES.**

Finally, even if it had standing to contest class certification (it does not), Uniblue's objection to class certification is misguided. Uniblue argues that it is improper to certify a nationwide class because "the class members' claims would be subject to the laws of many different jurisdictions." (Uniblue Resp. at 6-7.) This objection, however, deals strictly with manageability issues and, as Uniblue itself concedes (*Id*. at 5), the "manageability" requirement of Rule 23 does not need to be satisfied to certify a class for settlement purposes. *See Amchem*

*Prods., Inc. v. Windsor,* 521 U.S. 591, 619-21 (1997). Thus, Uniblue's objection in this regard also misses the mark.

"The impediment to a contested class certification posed by application of innumerable state laws is one of manageability . . . which is not a concern in certification of a settlement-only class." *In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, MDL 2103, 2011 WL 5599129, at *17 (N.D. Ill. Nov. 16, 2011). "This manageability problem is not present when certifying a class for settlement purposes, even if differing state laws are at issue." *See In re Kentucky Grilled Chicken Coupon Mktg. & Sales Practices Litig.*, MDL 2103, 2011 WL 5599129, at *17 (overruling objections and certifying a nationwide settlement class for claims of fraud, breach of contract, and violations of California, Michigan, and Illinois consumer fraud statutes); *see also In re AT&T Mobility Wireless Data Services Sales Tax Litig.*, 789 F.Supp.2d 935, 974 (N.D. Ill. 2011) ("The fact that the claims also implicate the laws of different states does not defeat predominance for the purpose of certifying a settlement class"); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 529 (3d Cir. 2004) ("the same concerns with regards to case manageability that arise with litigation classes are not present with settlement classes, and thus those variations are irrelevant to certification of a settlement class"); *In re Mexico Money Transfer Litig.*, 267 F.3d 743, 746-47 (7th Cir. 2001) (noting that, although certification of litigation class actions under the consumer fraud statutes of numerous states generally is inappropriate, the same is not true in the context of settlement class actions where "no one need draw fine lines among state-law theories of relief.").

Uniblue argues, without much effort, that class certification is inappropriate because the ICFA claim requires an individualized showing of reliance and damages, and thus, Rule 23's predominance requirement cannot been met. But, issues of reliance and damages go to

14

manageability which, as discussed above, is not a concern when certifying a class for settlement purposes only. Instead, the focus of the predominance requirement is whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem*, 521 U.S. at 623; *see Lemon v. Int'l Union of Operating Eng'g.*, 216 F.3d 577, 581 (7th Cir. 2000) (To satisfy the predominance requirement, "each class member must share common questions of law or fact with the rest of the class, therefore making class-wide adjudication of the common questions efficient compared to the repetitive individual litigation of the same question.").

Here, Plaintiffs seek to certify the proposed class for settlement purposes only. Therefore, managing a trial involving the "laws of many different jurisdictions" (Uniblue Resp. at 7) is simply not a concern. Uniblue's objection should be overruled in its entirety.

## CONCLUSION

All told, Uniblue lacks standing to object to the proposed Settlement Agreement or otherwise contest certification of the Settlement Class. The Settlement Agreement and the preliminary and final approval processes do not impinge on Uniblue's ability to litigate this case further, enforce any rights it may have against the Cleverbridge Defendants, or negotiate its own settlement in the future, should it choose to do so. As such, this Court should reject Uniblue's "response" and allow the Settling Parties to move forward with the preliminary and final approval processes.

Dated:  April 24, 2012                         Respectfully submitted,

                                               MARY WEBB, JOSEPH BERKOSKI, AND STACY
                                               PLUEBELL, INDIVIDUALLY AND ON BEHALF OF ALL
                                               OTHERS SIMILARLY SITUATED,

                                               By: /s/ Ari J. Scharg
                                                       One of Plaintiffs' Attorneys


Jay Edelson
Rafey S. Balabanian
Ari J. Scharg
Chandler R. Givens
EDELSON MCGUIRE LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378
jedelson@edelson.com
rbalabanian@edelson.com
ascharg@edelson.com
cgivens@edelson.com

## <u>CERTIFICATE OF SERVICE</u>

I, Ari J. Scharg, an attorney, certify that on April 24, 2012, I served the above ***Reply In Support of Motion for Preliminary Approval of Class Action Settlement*** by causing true and accurate copies of such paper to be transmitted to all counsel of record via the CM/ECF electronic filing system on this the 24th day of April, 2012

/s/ Ari J. Scharg_____

17